[No. 32564-7-I.   Division One.   August 1, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTON EMANUEL BARKER, *Appellant*.

*David L. Donnan,* for appellant (appointed counsel for appeal).

*David S. McEachran, Prosecuting Attorney,* and *Mac D. Setter, Deputy,* for respondent.

WEBSTER, C.J. — Anton E. Barker claims the court erred in denying him his right to represent himself. He also claims the court abused its discretion in excluding evidence of the complaining witness's deferred prosecution.

## FACTS

Barker was charged with first degree robbery and second degree assault. RCW 9A.56.190, .200(1); RCW 9A.36.021(1)-(c). The jury found Barker guilty on the robbery charge and

acquitted him on the assault charge. He received a standard range sentence of 68 months.

At trial, Duane Roessel testified that on November 4, 1992, he was walking home when a truck pulled up next to him. Barker, the driver, offered him a ride. Roessel accepted. Lloyd Larsen and Keith Finkbonner were passengers in the car. Roessel asked to be dropped off at a Texaco gas station near his home. When they approached the station, Barker did not stop, stating that he wanted to drop one of his other passengers off first. When they reached a nearby trailer park, Barker robbed and stabbed Roessel. Roessel eventually got away and called the police, who arrested Barker later that night.

In a December 30 pretrial motion, Barker moved for appointment of new counsel due to dissatisfaction with his attorney's preparations for trial. When the court denied this motion, Barker requested that he be allowed to represent himself. The court denied Barker's motion saying that it was too late. At that point, trial was scheduled for January 4. On January 20, the day trial in fact commenced, but before the jury came in, Barker's counsel raised the issue of his continued representation of Barker. Barker addressed the court but did not raise this issue.

## DISCUSSION

Barker claims the court erred in denying him his right to represent himself arguing that his request was both unequivocal and timely asserted.

■■ The United States Supreme Court recognizes a constitutional right of criminal defendants to waive assistance of counsel and to represent themselves at trial. *Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975). The Washington Constitution similarly provides that the accused in criminal prosecutions shall have the right to appear and defend in person. Const. art. 1, § 22 (amend. 10). A defendant's request to represent himself must be unequivocal. *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). Thus, a trial court must establish that in choosing to

proceed pro se a defendant makes a knowing and intelligent waiver of the right to counsel. *DeWeese*, at 377.[1] Elaborating on this matter, the Washington Supreme Court has stated:

> [A] judge must investigate as long and as thoroughly as the circumstances . . . demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility.

*Bellevue v. Acrey*, 103 Wn.2d 203, 210, 691 P.2d 957 (1984) (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 92 L. Ed. 2d 309, 68 S. Ct. 316 (1948)); *DeWeese*, at 379. The *Acrey* court continued:

> In interpreting *Faretta*, we agree that a colloquy on the record is the preferred means of assuring that defendants understand the risks of self-representation. . . . That colloquy, at a minimum, should consist of informing the defendant of the nature and classification of the charge, the maximum penalty upon conviction and that technical rules exist which will bind defendant in the presentation of his case.
>
> . . . .
>
> In the absence of a colloquy, the record must somehow otherwise show that the defendant understood the seriousness of the charges and knew the possible maximum penalty. The record should also show that the defendant was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story. Accordingly, only rarely will adequate information exist on the record, in the absence of a colloquy, to show the required awareness of the risks of self-representation.

(Citation omitted.) *Acrey*, at 211. Whether the defendant's waiver is valid depends upon the facts and circumstances of each case. *DeWeese*, at 378.

Here, when, prior to trial, Barker moved for appointment of new counsel, the court denied his motion. Barker then stated "Your Honor, there is a conflict of interest between me

---

[1] The *Faretta* court elaborated that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, at 835 (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 87 L. Ed. 268, 63 S. Ct. 236, 143 A.L.R. 435 (1942)).

and him." The court informed Barker that his only option was to hire an attorney. Barker declared that he wanted to represent himself and did not want counsel. In clarifying his request to the court, he was emphatic, stating "I am not asking that. I am saying, to represent myself." The court denied Barker's motion. When the prosecutor attempted to clarify for the record what conflict of interest Barker was referring to, the court dismissed the matter summarily.[2] We find that Barker's request was unequivocal.

■ The State further contends that even if this court finds Barker's December 30 request was unequivocal, he waived his assertion to proceed pro se the day trial began, reclaiming his right to representation by counsel. Just prior to trial, with Barker present, his attorney disclosed on the record that he had lost his temper with Barker and indicated that Barker may wish to address the court regarding his continued representation.[3] Barker did address the court, but did not raise this issue. Given the court's prior, clear refusal to allow Barker to represent himself, we find that it would have been a useless gesture for Barker to have raised the matter at this point.

■■ Here, when Barker made his unequivocal request that he be allowed to represent himself, the court responded that it was too late. The *Faretta* right to self-representation is not absolute, and the defendant's motion to proceed pro se

---

[2]The following colloquy ensued:

"THE COURT: I don't really think it's anything we should go into. It's basically none of your business. It's none of my business. I just need to know that he is going to be represented by counsel, and if he knows he can hire his own attorney he can. If he doesn't then Mr. Ostlund is one of the best attorneys in the county as far as I am concerned, and that's —

"MR. OSTLUND: I am not aware of any legal conflict of interest in the case at all, Your Honor.

"THE COURT: Yeah.

"MR. BARKER: I am being denied my rights?

"THE COURT: You can sit down, and we will take the next case."

[3]The State also points out that subsequently the court asked the parties whether they wanted to raise other issues before trial commenced, and Barker remained silent, and that in statements to the court, Barker referred to his appointed counsel as "my attorney". These facts do not alter our analysis, *infra*.

must be timely, or it is relinquished and left to the discretion of the trial judge. *DeWeese*, at 377. If the demand for self-representation is made (1) well before the trial or hearing and unaccompanied by a motion for a continuance, the right of self-representation exists as a matter of law; (2) as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter; and (3) during the trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court. *State v. Fritz*, 21 Wn. App. 354, 361, 585 P.2d 173, 98 A.L.R.3d 1 (1978), *review denied*, 92 Wn.2d 1002 (1979).[4] Barker made his request prior to trial on December 30, without simultaneously requesting a continuance. At that time, trial was set for January 4. However, trial did not in fact begin until January 20.[5] Thus, because Barker made his request well before trial began, and did not request a continuance, he should have been granted his motion to represent himself as a matter of law.

Even if we were to take the view that on December 30 trial was scheduled to begin 4 days later, thus placing Barker's case into *Fritz*'s second category, our analysis would not change. The record affirmatively shows that Barker was literate and exercising his free will, while the court summarily denied Barker's request without conducting the recommended *Faretta* colloquy, and in the total absence of any evidence that Barker understood the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presen-

---

[4]*Fritz* further stated that its imposition of a " 'reasonable time' requirement should not be and, indeed, must not be used as a means of limiting a defendant's *constitutional* right of self-representation. We intend only that a defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice." *Fritz*, at 362 (quoting *People v. Windham*, 19 Cal. 3d 121, 128 n.5, 560 P.2d 1187, 137 Cal. Rptr. 8 (1977)).

[5]It appears from the record that trial was continued twice. While the record is unclear as to why trial was moved from January 4 to January 14, it reveals that trial was moved from January 14 to January 20 due to defense counsel's illness.

tation of his defense. The record does not reflect *any* analysis by the court of the facts and circumstances of the case, or any exercise of discretion. The court simply stated that it was "too late". Under these circumstances, we hold that the court erred in denying Barker's request to represent himself.

## II

Barker also claims the court should have permitted him to introduce evidence that Roessel had been convicted of a DWI and that as a condition of his probation he was not to have any alcohol or illegal drugs, to support Barker's defense that Roessel fabricated the robbery allegations to cover up his use of alcohol and/or drugs that evening. Barker asserts that the fight was a fight over drugs or alcohol.

■ Under ER 404(b), evidence of other crimes, wrongs, or acts is not admissible to show a person acted in conformity with the character trait evidenced by that prior bad act. ER 404(b). However, the trial court, in its discretion, may admit such evidence if it determines, first, that the evidence is logically relevant to and necessary to prove an essential element of the crime charged, such as motive or intent. *State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982); *State v. Stanton*, 68 Wn. App. 855, 860, 845 P.2d 1365 (1993). Next, the court must determine whether the probative value of the evidence outweighs its potential prejudice under ER 403. *Stanton*, at 860.

■ The admission or refusal of evidence lies largely within the discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion. *State v. Halstien*, 122 Wn.2d 109, 125, 857 P.2d 270 (1993). Whether evidence of prior "bad acts" is admissible under ER 404(b) is largely within the discretion of the trial court. *Halstien*, at 125.

We find that the court correctly denied the admission of the DWI evidence. The court found that the evidence was not relevant to prove the essential element of motive under ER 404(b), stating that "I don't see that the existence of a conviction or the fact that he was under a probation condi-

tion makes it any greater or more likely that if he doesn't want to be discovered that he's under the influence of drugs. That motive is there regardless of the existence of a DWI conviction or not." We agree. Had Roessel waited to report the incident, giving himself time to recover from the effects of any alcohol and/or drugs, Barker's theory of fabrication might make sense. However, Roessel reported the incident immediately after it occurred. Further, admitting the evidence that Roessel was on probation for a DWI and would be subjected to penalties beyond the average citizen for illegal drug activity gives Roessel even less incentive to lie about being robbed. Even if Roessel had not been on probation, any illegal drug use would subject him to potential criminal prosecution. Finally, two other witnesses testified that Barker robbed Roessel. Thus, even if Roessel had been in violation of his probation conditions, it is unlikely that this action would have been affected. Barker did not try to admit the evidence to establish Roessel's lack of recall, or his ability to observe or perceive. Thus, whether Roessel was violating probation conditions at the time does not make the existence of the robbery any more or less probative. We find that the court did not abuse its discretion in excluding evidence of the complaining witness's deferred prosecution, because the evidence neither was relevant to show Roessel's motive nor did it make the existence of Barker's robbery more or less probative.

However, because Barker was denied the right to represent himself, we reverse and remand for a new trial.

BECKER, J., concurs.

KENNEDY, J. (dissenting in part) — I agree with the majority's disposition of the evidentiary issue raised in this appeal, but I respectfully disagree with the majority's conclusion that the trial court erred by denying Mr. Barker's request to represent himself. First, the request, in context, was equivocal; second, it was untimely; third, by not renew-

ing the request after various continuances in the trial date by which the untimely nature of the request could arguably have been cured, Barker relinquished his right to represent himself.

It is necessary to review Mr. Barker's request in its total context:

> MR. BARKER: Your Honor, the bottom line is me and Ostlund [Appellant's defense attorney], me and John Ostlund, we don't see eye to eye, Your Honor, at all. We haven't discussed my case; we haven't even reviewed my case whatsoever. I had conflict with him the other week in a PR hearing. We went back and forth, and he advised me to get my own counsel. I asked him if he could get off my case and then he told me to hire my own attorney, and I feel like he wouldn't represent me to the best of his knowledge, even though he has a lot of cases he has to do whatever, whatever to — brought that out to me in court that he doesn't have the time. So, I would ask the Court with all due respect that he could be removed from my case, and *I will switch*. I don't know if he should put another counsel from his office, because he is the head man in his office, or *assign another attorney*. If not, then *I have my rights to go to California*.

> THE COURT: It will be denied. The only real option you have is to hire your own attorney. When you get an attorney from the Public Defender's office they assign their officer, and basically that's the way it goes, but you have got the best counsel in the county and —

> MR. BARKER: Your, Honor, there is a conflict of interest between me and him.

> THE COURT: Lots of conflict of interest. You are not the lawyer. He —

> MR. BARKER: Can I —

> MR. GRANT [deputy prosecuting attorney]: Stipulated on the record —

> MR. BARKER: Are you refusing me my rights to exercise *my rights as a citizen of California* for no reason?

> THE COURT: I have told you what you have been told before. If you wish to hire your own attorney, you are free to do so.

> MR. BARKER: Okay, but are you refusing my right to exercise my rights?

> THE COURT: Absolutely not. Mr. Ostlund would be your attorney.

> MR. BARKER: What about *my rights as a citizen of California?*

> THE COURT: How many times do I have to tell you, if you wish to hire your own attorney, you may hire your own attorney.

> MR. BARKER: *I am not asking that. I am saying, to represent myself.*

> THE COURT: At this time it's too late.

MR. GRANT: Excuse me. I was hoping to clarify for the record's sake what this conflict of interest is that he is claiming. All we hear from him today is that he has a problem dealing with Mr. Ostlund. I don't know of any particular conflict of interest.

THE COURT: I don't really think it's anything we should go into. It's basically none of your business. It's none of my business. I just need to know that he is going to be represented by counsel, and if he knows he can hire his own attorney he can. If he doesn't then Mr. Ostlund is one of the best attorneys in the county as far as I am concerned, and that's —

MR. OSTLUND: I am not aware of any legal conflict of interest in the case at all, Your Honor.

THE COURT: Yeah.

MR. BARKER: I am being denied my rights?

THE COURT: You can sit down, and we will take the next case.

(Italics mine.) Report of Proceedings (Dec. 30, 1992), at 4-6.

It is not clear from this record that Mr. Barker desired to represent himself *at the trial* in Washington. He appears to have been operating under the mistaken assumption that he could either switch from one court-appointed attorney to another or avoid a trial in Washington altogether and go to California. His request to represent himself may well have been for the purpose of asserting some self-perceived right, as a citizen of California, to be returned to that state, in lieu of a trial in Washington, if his request for substitute court-appointed counsel were not to be granted.

Even if Mr. Barker's request can be viewed as an unequivocal request to represent himself at the trial in Washington, we should affirm the trial court's determination that the request came too late. The request was made on December 30, 1992, a Wednesday. New Year's Day, a legal holiday, fell on Friday of that week. Trial was scheduled to commence on Monday, January 4, 1993. Thus, there was only one court day remaining prior to trial, that being Thursday, December 31, which was New Year's Eve.

In *State v. DeWeese*, 117 Wn.2d 369, 377, 816 P.2d 1 (1991) a defendant's request to represent himself was granted on March 9, 1989; trial was scheduled to commence on March 20. *DeWeese*, 117 Wn.2d at 372. Following his conviction, DeWeese appealed, arguing *inter alia* that his request to

represent himself had been equivocal and untimely. The Supreme Court affirmed the conviction, holding that De-Weese had made a timely and valid request to proceed pro se. *DeWeese*, 117 Wn.2d at 377. Thus, an unequivocal request made 11 days before trial would appear to be timely.

In *State v. Fritz*, 21 Wn. App. 354, 364, 585 P.2d 173, 98 A.L.R.3d 1 (1978), *review denied*, 92 Wn.2d 1002 (1979) the defendant's unequivocal request, on the day set for trial, was denied by the trial court on untenable grounds (*i.e.*, that the defendant was not competent to intelligently waive counsel or to serve as his own counsel). The conviction was nevertheless affirmed by this court, because the request was both untimely and interposed for the purposes of delay. *Fritz*, 21 Wn. App. at 365 (*see also Fritz*, at 361). Accordingly, the record reflected a sound basis for rejection of the request, even though the trial court did not rest its decision on that basis.

In *State v. Garcia*, 92 Wn.2d 647, 655-56, 600 P.2d 1010 (1979) our Supreme Court stated (albeit in dictum):

> In order to invoke the unconditional self-representation right, an unequivocal assertion of that right must be made *within a reasonable time before trial*. If the request is made shortly before or as the trial is to begin, the existence of the right depends on the facts with a measure of discretion in the trial court. *In the absence of substantial reasons a late request should generally be denied, especially if the granting of such a request may result in delay of the trial.*

(Citations omitted. Italics mine.)

In light of these cases, I find no abuse of discretion in the trial court's determination that Mr. Barker's request was untimely. That being so, it was not error for the trial court to fail to make the *Faretta* inquiries.[6]

The record reflects that Mr. Barker's case did not go to trial on January 4, 1993, as scheduled. Instead, it was continued several times. On January 20, 1993, after jury selection, with Mr. Barker present, his attorney disclosed that he had lost his temper with Barker, and indicated that Mr.

---

[6]*Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975).

Barker might wish to address the court regarding his continued representation. Report of Proceedings (Jan. 20, 1993), at 3.

Immediately thereafter, Barker did address the court, but said nothing about self-representation. Instead, he discussed two unrelated issues. Report of Proceedings, at 2-7. Following those discussions, the trial court twice asked whether the parties wished to raise any other issues and Barker remained silent. Report of Proceedings, at 6-7. Moreover, during his statements to the court Barker repeatedly referred to his court-appointed counsel as "my attorney". Report of Proceedings, at 3.

In *State v. Bebb*, 108 Wn.2d 515, 740 P.2d 829 (1987) the trial court initially granted the defendant's request to represent himself, but appointed a public defender to act as standby counsel, over Bebb's objections. Later, Bebb requested that standby counsel's status be changed to cocounsel. This request was granted. Thereafter, the public defender represented Bebb fully, and Bebb made no attempt, during trial, to reassert his right of self-representation. *Bebb*, 108 Wn.2d at 518, 520.

Following his conviction, Bebb appealed, contending *inter alia* that the trial judge had infringed on his constitutional right of self-representation, indeed, had compelled him to relinquish that right, by virtue of a tentative ruling that Bebb's communications with standby counsel would not be privileged. *Bebb*, 108 Wn.2d at 524-25.

The Supreme Court affirmed the conviction, although the trial court's tentative ruling as to the attorney-client privilege was clearly incorrect, because once the trial commenced, Bebb acquiesced entirely when the public defender assumed the function of sole trial counsel. Thus, Bebb's previous request for self-representation was rendered moot when, by his conduct, he voluntarily waived the previously asserted right to proceed pro se and reclaimed his right to counsel. *Bebb*, 108 Wn.2d at 525-26.

Similarly, I believe that Mr. Barker, by his conduct at the trial, relinquished any right of self-representation he may

have previously asserted, unequivocally or otherwise. As our Supreme Court noted in *Bebb*, 108 Wn.2d at 525-26:

> Since the right to proceed pro se exists to promote the defendant's personal autonomy, rather than to promote the convenience or efficacy of the trial (and often operates to the defendant's detriment) courts generally find that relinquishment of the right to proceed pro se is a far easier matter than waiver of the right to counsel.

(Citation omitted.)

For all of these reasons, I would affirm Mr. Barker's conviction.