95 P.3d 408 (2004)
STATE of Washington, Respondent,
v.
Billyjo Lynn HEMENWAY, Appellant.
No. 29956-9-II.
Court of Appeals of Washington, Division 2.
August 3, 2004.
*410 Michael C. Kinnie, Vancouver, WA, for Respondent.
Lisa Elizabeth Tabbut, Attorney at Law, Longview, WA, for Appellant.
VAN DEREN, J.
Billyjo Lynn Hemenway appeals the trial court's denial of his request to represent himself at trial on the charge of first degree rape. Because Hemenway was consistently disruptive and sought to obstruct the orderly administration of justice, we affirm.

FACTS
The State charged Hemenway with first degree rape. Hemenway was arraigned, he removed one judge for prejudice, and his first court appointed attorney successfully moved to withdraw after Hemenway made accusations against him.
Alleging that his second court appointed attorney was biased and ineffective for failing to submit his motion, Hemenway requested new counsel on December 9, 2002. The court asked if he sought self representation. Hemenway indicated that he did not, but he continued to complain about the second attorney. The court appointed this attorney as stand by counsel after a long discussion with Hemenway.
The next day the court again addressed whether Hemenway sought to waive counsel and represent himself at trial. The court asked Hemenway:
In my review of the record from yesterday, you were not unequivocal. You were saying to me essentially that you didn't want to represent yourself but you didn't have the money to hire the attorney you want to have.
That's not quite equivocal enough, Mr. Hemenway, so I need to hear from you, sir. Do you wish to do this case yourself?
[Hemenway]: No.
IV Report of Proceedings (RP) at 67.
Then at the next hearing on December 31, 2002, Hemenway indicated that he wanted to represent himself, asserting that his attorney was lying to him. The court denied Hemenway's request in part because of his prior disruptive behavior. Soon after this hearing, the court granted the State's motion to determine Hemenway's competency for trial. The court later found Hemenway competent.[1]
Trial commenced on February 3, 2003. Potential jurors were screened using a questionnaire inquiring about prior media coverage of Hemenway's alleged crime. Before the first jury panel was sworn in, Hemenway continuously interrupted the judge, showed contempt for the court proceedings, and alleged that his attorney instructed him to lie. Consequently, the court temporarily removed him from the courtroom. Upon removal, he engaged in a loud fight with custodial staff which the potential jurors could hear. The court called in a new jury pool to ensure that Hemenway received a fair trial.[2] The jury found Hemenway guilty as charged and the court sentenced him to life in prison.

*411 ANALYSIS

I. SELF REPRESENTATION
Hemenway argues that the trial court erred by refusing to allow him to represent himself. He asserts that he made a timely request and that the trial court's rationale for denying his right of self representation improperly focused on serving his best interests.
A criminal defendant has a constitutional right to waive assistance of counsel and proceed pro se at their trial. U.S. CONST. AMEND. VI, VIX; WASH. CONST., art. I, § 22; State v. Fritz, 21 Wash.App. 354, 358, 585 P.2d 173 (1978). "In order to exercise the right, a defendant's request must be unequivocal, knowingly and intelligently made, and must be timely." State v. Vermillion, 112 Wash.App. 844, 851, 51 P.3d 188 (2002), review denied, 148 Wash.2d 1022, 66 P.3d 638 (2003). To determine the validity of a defendant's self representation request, the trial court examines the facts and circumstances and the entire record. In re Detention of Turay, 139 Wash.2d 379, 396, 986 P.2d 790 (1999); State v. DeWeese, 117 Wash.2d 369, 378, 816 P.2d 1 (1991). The court should also engage in a colloquy with the defendant to ensure that he or she understands the risks and consequences of self representation. Vermillion, 112 Wash.App. at 851, 51 P.3d 188.
We review a trial court's denial of a defendant's self representation request for an abuse of discretion that "lies along a continuum, corresponding to the timeliness of the request: '(a) if made well before trial ... and unaccompanied by a motion for continuance, the right of self-representation exists as a matter of law.'" Vermillion, 112 Wash.App. at 855, 51 P.3d 188 (quoting Fritz, 21 Wash.App. at 361, 585 P.2d 173). However, a defendant cannot seek self representation in order to cause delay or obstruct the administration of justice, even though a court "should indulge every reasonable presumption against finding that a defendant has waived the right to counsel," and a defendant can waive self representation by disruptive words or misconduct. Vermillion, 112 Wash.App. at 851, 51 P.3d 188; Fritz, 21 Wash.App. at 361, 363, 585 P.2d 173.
Hemenway consistently engaged in disruptive behavior that obstructed the orderly administration of justice. Significantly, Hemenway provides no argument to rebut this fact. We briefly review the proceedings leading up to his purported unequivocal request for self representation on December 31, to demonstrate Hemenway's pattern of misconduct and disrespect toward the court's officers and process.
In his first court appearance, Hemenway refused to speak or respond when the court asked him preliminary questions, such as the spelling of his name. The first judge was removed because of Hemenway's affidavit of prejudice. Hemenway then complained at a later hearing that his court appointed attorney lied to him. Because his trial for first degree rape was scheduled less than two weeks from that date, the court attempted to explain to Hemenway that if he received new counsel, he had to waive his right to a speedy trial in order to provide new counsel adequate time to prepare his defense. Hemenway refused to make a choice and instead asserted ineffective assistance of counsel. The trial court indicated that Hemenway was inappropriately repeating the same arguments he had made to the first judge. See II RP at 13 (the court stated, "you've been down this road ... with [the first judge] a number of times. I've reviewed the tapes ... It still comes down to the same problem.").
Soon after this exchange, Hemenway alleged that the second judge was biased because his attorney was a, "friend of the Court." The court responded, "you and I need to come to an understanding real soon, real quick. You are not gonna pull the same things with me that you pulled with [the first judge]." II RP at 16. The court granted Hemenway's first attorney's request to withdraw, which was based on Hemenway's accusations, and appointed a second attorney to represent Hemenway.
At his next hearing on December 9, 2002, Hemenway again complained of ineffective assistance of counsel. He stated that he did not want his second appointed attorney and *412 wanted self representation "[i]f I have no other choice." III RP at 34. The court engaged Hemenway in a colloquy in which Hemenway stated that he had studied law in prison and understood the State's charges. The court inquired, throughout Hemenway's interruptions, if he understood rules of evidence and procedure and emphasized that the court could not provide him guidance with his trial. Hemenway responded that he understood these rules, but he also sought to file an affidavit of prejudice against the judge.
Soon after this exchange, the court asked Hemenway again if he wanted to waive his counsel. Hemenway replied that he wanted an attorney, but not his current one. Hemenway also complained that his attorney would not file his motion to change venue; however, Hemenway's attorney informed the court that he had not reviewed the proposed motion. Hemenway continued to allege that his court appointed attorneys lied to him and he refused to discuss the matter further with his attorney. The court then asked Hemenway again if he sought self representation. Hemenway replied: "I do not know how to represent myself. I'm dyslexic, I'm half blind, and I don't trust him [Hemenway's second attorney]." III RP at 47. The court then appointed Hemenway's attorney as stand by counsel, while Hemenway insisted that the court "put me in a position where I have no choice but to represent myself." III RP at 48.
The court held a hearing the next day to clarify Hemenway's intent of self representation. Hemenway clearly stated that he did not want to proceed pro se. See IV RP at 67 (The Court: "Do you wish to do this case yourself?" The Defendant: "No."). But after the court granted defense counsel's continuance motion, Hemenway declared a violation of his right to a speedy trial. The court stated "I'm not going to allow you to manipulate this Court the way you have tried." IV RP at 70. Hemenway then repeatedly demanded that he be excused, stopping only when the court firmly instructed him to "not act out in my court." IV RP at 71. About five minutes later, Hemenway told the court that he would not cooperate with his attorney, contrary to his position at the beginning of the hearing.[3]
At his next court appearance on December 31, 2002, Hemenway indicated that he wanted to represent himself, again because his attorney would not file his motions, lied to him, and did not have his best interest in mind. The court denied Hemenway's request in part because, "I'm hearing repeated today the same things that he accused [his prior two appointed counsel of] in the past." V RP at 82. Hemenway then continuously demanded to be excused from the court, eventually prompting the judge to state to counsel: "Gentlemen, what I would like you to do is prepare for me a brief on the question of disruptive defendants in the court and what the Court is supposed to do and not do in that regard." V RP at 89. Soon after this hearing, the State moved for a competency evaluation to determine if Hemenway's frequent disruptions resulted from a mental health problem. After receiving the report, the court found Hemenway competent, but the report indicated that he demonstrated antisocial behavior.
Hemenway's persistent disruptions of the court proceedings through equivocal requests for new counsel, disrespect toward the court, and accusations of misconduct by the appointed attorneys and the judges are similar to those of the defendant in State v. Bolar, 118 Wash.App. 490, 78 P.3d 1012 (2003). In Bolar, the court upheld the trial court's denial of a defendant's request for self representation in part because Bolar's consistent indecision about retaining his counsel was "part of a concerted effort of purposeful disruption designed to obstruct the orderly administration of justice." 118 Wash.App. at 516, 78 P.3d 1012. Further, courts upholding a defendant's right to self representation involve a record completely absent of any disruption or disrespect by the defendant. See Vermillion, 112 Wash.App. at 848, 51 P.3d *413 188 (finding that the defendant "was courteous and respectful to the court; thus, there was no indication that his purpose was to delay the trial or to obstruct the orderly administration of justice."); State v. Breedlove, 79 Wash.App. 101, 108, 900 P.2d 586 (1995).
Considering Hemenway's consistent disruptive behavior, the court did not err in denying his self representation request. Additionally, the court's decision occurred before Hemenway's competency evaluation at a time when his behavior demonstrated an unstable and perhaps paranoid state of mind. Further, a defendant can waive his right to self representation through subsequent misconduct. Hemenway's misconduct on the first day of trial, which tainted the entire potential jury panel, certainly amounts to behavior disqualifying Hemenway from self representation before the subsequent jurors. As the trial court stated at Hemenway's final court appearance:
... I think I've never seen a defendant like you before. Since the beginning of this case, since the moment you and I first laid eyes on each other you have been disruptive and disrespectful.
You have refused to stand at the beginning of any court session out of disrespect for this Court. You've shouted and interrupted everyone, including this Court.
You've made frivolous motions.... You have attempted to manipulate these proceedings from the very beginning and throughout these proceedings in order to create issues for yourself on appeal. You have presented a challenge for this Court.
IX RP at 423.
Hemenway contends that the trial court improperly focused on his best interests when denying his self representation request on December 31, 2002, and that his conduct before and after this request is irrelevant to our determination of whether the trial court erred. This argument ignores the context of the court's ruling. Hemenway had been consistently disruptive up to his last request for self representation on December 31, which involved the same unfounded allegations as prior hearings. And his disruptive behavior continued in tainting the entire first panel of jurors called for voir dire on the first day of trial on February 3, 2003.
Finally, Hemenway argues that the court's decision here is similar to State v. Barker, 75 Wash.App. 236, 881 P.2d 1051 (1994). But in Barker, the court performed neither a proper colloquy nor "any analysis by the court for the facts and circumstances of the case." 75 Wash.App. at 241-42, 881 P.2d 1051. And unlike Hemenway, Barker was neither disruptive nor sought to delay the court's proceedings.
In conclusion, considering Hemenway's continuous and purposeful disruptive misconduct toward the court and its officers, the totality of the circumstances of Hemenway's self representation request, and the presumption against waiver of a right to counsel, we affirm the trial court's decision to deny Hemenway's request to represent himself in his first degree rape trial.

II. HEMENWAY'S STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)[4]
Hemenway filed a SAG. Although all of Hemenway's assertions misstate or distort the record, we address his contentions. Hemenway first asserts that he was denied his constitutional rights to be present in the courtroom. But the record indicates Hemenway demonstrated a highly disruptive disregard of the court's decorum and procedure. When the court gave the jury preliminary instructions and before they were sworn in, Hemenway continuously interrupted and demonstrated contempt toward the judge, asserted that his attorney instructed him to lie, and eventually fought with security personnel. The court properly exercised its discretion to temporarily remove Hemenway from the proceedings. See e.g., State v. Chapple, 145 Wash.2d 310, 318-19, 322, 36 P.3d 1025 (2001). Because of Hemenway's disruptive conduct, the court brought in a new panel of prospective jurors to ensure a fair trial and Hemenway was present during all these proceedings. Thus, the trial court did not violate Hemenway's constitutional rights.
Hemenway also asserts ineffective assistance of counsel. A defendant demonstrates *414 ineffective assistance of counsel by proving (1) that counsel's representation fell below an objective and reasonable standard; and (2) that counsel's errors were serious enough to deprive the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Jeffries, 105 Wash.2d 398, 418, 717 P.2d 722 (1986). The defendant must "show deficient representation based on the record established in the proceedings below" and overcome the court's strong presumption of effective assistance of counsel. State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995).
Here, Hemenway created a conflict of interest by telling the first panel of prospective jurors in open court that his attorney asked him to lie. Hemenway's attorney sought withdrawal; but the court required Hemenway's attorney to continue primarily because of Hemenway's disruptive behavior, the skill of Hemenway's attorney, and because it was the court's view that Hemenway "will do anything and everything to avoid having this case move forward." VI RP at 119. The second jury was not aware of Hemenway's allegation against his attorney. Significantly, the record demonstrates that Hemenway's attorney adequately represented Hemenway throughout his trial. Thus, Hemenway fails to show ineffective assistance of counsel.
Hemenway's final ground asserts that the trial court abused its discretion in denying his change of venue motion. But the record demonstrates that the trial court carefully selected a fair jury. For example, the court brought in a second prospective jury panel after Hemenway's outbursts, immediately removed eleven jury members for potential bias, and the jury questionnaire expressly asked potential jurors about prior media coverage of Hemenway's crime. Thus, the court did not abuse its discretion by denying this motion.
We affirm.
We concur: MORGAN, A.C.J., and BRIDGEWATER, J.
NOTES
[1] We note that although we do not have the verbatim report of proceedings of the competency hearings, the record before us verifies the competency issues referenced in this opinion.
[2] Hemenway was present by close circuit television during the second jury panel's swearing in and preliminary instructions. He was physically present in the courtroom during all subsequent hearings.
[3] See IV RP at 75 (Defendant: "I refuse to talk to him, and if you insist on violating my quick and speedy trial rights, I'm through with this." The Court: "Okay. [Hemenway's attorney], we'll make [Hemenway] available, if you wish." Defendant: "I won't talk to him." The Court: "Thank you.").
[4] RAP 10.10(a).