IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68926-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| THOMAS-JAMES DONALD ARTHUR, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 18, 2013 |

SCHINDLER, J. — Thomas-James Donald Arthur seeks reversal of his conviction of failure to register as a sex offender. Arthur argues the court abused its discretion by denying his request to proceed pro se. We affirm.

## FACTS

In 1991, the Snohomish County Superior Court Juvenile Division found Thomas-James Donald Arthur guilty of rape of a child in the first degree. Arthur acknowledged that as a convicted sex offender, he had an obligation to register his residential address with the county sheriff's office.

On November 22, 2010, Arthur changed his registration address from homeless to his parents' address in Mountlake Terrace. Arthur's parents, Charlotte and James

Arthur, own a four bedroom home.[1] There is a wood shed in the backyard. The shed has no electricity, no furniture, and leaked when it rained.

On March 17, 2011, the Mountlake Terrace Police Department came to the Mountlake Terrace home to verify that Arthur lived there. Charlotte and James told police that Arthur no longer lived at their home and had moved in with his girlfriend Susan Barringer.

The State charged Arthur with failure to register as a sex offender under former RCW 9A.44.132 (2010).[2] The State alleged that from March 17 to April 27, 2011, Arthur, "having registered as residing at a fixed residence, . . . cease[d] to reside at that residence and did knowingly fail to provide timely written notice to the county sheriff's office."[3]

The court scheduled trial to begin on October 21, 2011. On October 7, the parties agreed to continue the trial until January 13, 2012. On December 20, 2011, the parties agreed to continue the trial date to March 16, 2012. On February 9, 2012, the parties entered an agreed continuance of the trial date until April 20, 2012.

Arthur's trial began on April 24, 2012. The State's two witnesses, Charlotte and James, were present and waiting to testify. James suffers from gout and was confined to wheelchair.

The court heard several pretrial motions. Arthur agreed to waive his right to a jury trial. The court conducted a colloquy with Arthur on the request to waive his right to

---

[1] We refer to Arthur's parents by their first names for clarity and intend no disrespect.

[2] The legislature amended RCW 9A.44.132(1) in 2011, adding failure to register as a sex offender to include previous convictions for felony failure to register as a sex offender "pursuant to the laws of another state." LAWS OF 2011, ch. 337, § 5.

[3] After the State charged Arthur, Arthur registered with the sheriff's office that he was living at Barringer's address in Edmonds.

a jury trial and found Arthur voluntarily, knowingly, and intelligently waived his right to a jury trial.

The State informed the court that Arthur would stipulate that he was required to register and to the admissibility of exhibits related to his 1991 conviction, including a certified copy of the order on disposition. The court accepted the stipulation and admitted the exhibits.

Arthur would not stipulate to the admissibility of the sex offender registration forms he filled out at the Snohomish County Sheriff's Office in November 2010 and September 2011. The court asked whether a CrR 3.5 hearing was necessary. Before the CrR 3.5 hearing, the court ordered a brief recess to allow defense counsel to discuss the CrR 3.5 issue with Arthur. After the recess, defense counsel informed the court that Arthur wished to proceed pro se: "Your Honor, during the brief recess, it did come to my attention that Mr. Arthur would like to address the Court. He indicated to me that he actually wished to represent himself at this trial."

With the court's permission, Arthur read a brief statement. Arthur said, "My attorney is an officer of the court. I have the highest level of respect for him. I request the Court to allow me to set motions in my own defense at this time. That's all I have to say." Arthur told the court that he needed a continuance so he could subpoena additional witnesses and evidence.

> THE DEFENDANT: Your Honor, I did waive off a jury trial. I believe that will work and I have full faith in you, sir. However, there is some discrepancies in the case that I thought would be brought up and I'm not seeing anything in light of that right now. I don't want to waste any of the Court's time. I'm very capable of defending myself. With respect to [defense counsel], I just feel within me that there are things in this courtroom right now that are not going the way that I had expected that need to come out.

3

THE COURT: You realize we're just at the very beginning stages of the trial?

THE DEFENDANT: Yes, Your Honor, but there are at least two more witnesses that should have been on the docket and they're not here, and there is information that was supposed to be subpoenaed that would be -- I got the idea when this came up about the stipulation of admissibility of statements of the defendant. I don't see any documentation for the Mountlake Terrace Police Department and letters and notes that I came by, requesting them, if they had been trying to get a hold of me. That's in my defense.

THE COURT: All right. Well, I just asked you a minute ago if you're ready to go to trial right here right now.

THE DEFENDANT: With the exception of that answer, no, because --

THE COURT: Well, wait. What do you mean by with the exception of that answer?

THE DEFENDANT: If those two things I just -- if those two items that I just listed were here, I would be ready to go myself to defend my case, yes, Your Honor, but, no, I'm not, because I don't have the two witnesses and the documentation.

THE COURT: So you're not just asking to represent yourself. You're asking for the trial to be delayed?

THE DEFENDANT: With all due respect, yes, sir.

The court denied Arthur's request to proceed pro se as untimely.

[T]he law is that if a request is made well in advance of the trial, it should be granted as a matter of, essentially, of routine for a defendant to represent himself if the Court is, in fact, satisfied that the defendant is appreciative of the risks and the exposure that he faces and what the maximums are. There are rules that need to be followed and whatnot, but we're not well in advance of the trial. We're not even shortly in advance of the trial. We have begun the trial.

And the rule, also, is that once the trial has begun, the Court has significant discretion as to whether or not to allow for a person to say or assert their right to represent themselves at the time. We have started this trial. I've already admitted three or four exhibits. . . .

The State had witnesses -- or had a witness appear yesterday under a personal service subpoena who was ordered to come back today . . . .

. . . .

I was also informed yesterday that the defendant's father, who was a witness who was under personal service subpoena, who has health problems, was not here yesterday but would be returning today. But, again, the man has some health issues . . . .

. . . .

4

> I haven't heard a word about any motion to continue until such time as both people under subpoena actually were present in the courthouse ready to testify . . . . If the defendant truly wanted to represent himself, he should have made this motion before we had already started the trial and before these witnesses, one of whom is particularly not easy or convenient for him to get here, were present outside in the hallway less than 15 feet from the courtroom door waiting to testify. The motion is denied.
>
> . . . .
>
> [T]he record should reflect the basis for the Court's denial of the motion for the defendant to represent himself is that this is untimely. We're already here. We have actually started the trial. While opening statements hadn't been made yet, the attorneys were in the process of admitting exhibits. I had admitted several exhibits.
>
> . . . .
>
> He has an attorney who's here and ready to represent him. Mr. Thompson is a skilled lawyer and he is prepared to go to trial and that's what we're going to do.

Following the CrR 3.5 hearing, the court concluded that the sex offender registration forms Arthur filled out at the Snohomish County Sheriff's Office were admissible.

The State called five witnesses: three detectives from the Snohomish County Sheriff's office, Arthur's mother Charlotte, and Arthur's father James. James testified that Arthur lived at his home during the spring of 2011. James said that Arthur would sleep in the shed, on the couch, or in the family van. Charlotte testified that Arthur had not lived on the property for five or six years. Charlotte said that it did not look like anyone had been sleeping in the shed in 2011.

Arthur and his girlfriend Susan Barringer testified for the defense. Barringer testified that when she started dating Arthur in March 2011, she picked him up at his parents' house "[p]robably every day, because he didn't drive." Barringer testified that Arthur lived in the wood shed and that she saw Arthur's personal belongings inside the shed. Arthur testified that he stayed in the wood shed in March and April of 2011.

5

Arthur testified that his father agreed he could stay in the shed. Arthur also testified that he and his father agreed not to tell his mother he was staying on the property.

The court found the defendant committed the crime of failing to register as a sex offender. The court explicitly found Charlotte's testimony credible. The court found that the testimony of Arthur, James, and Barringer was not credible. The court sentenced Arthur to 90 days confinement. The court ordered the sentence could be served as work release.

Arthur appeals.

## ANALYSIS

Arthur argues that the court abused its discretion by denying his request to represent himself.

We review the trial court's denial of a request for self representation for abuse of discretion. State v. Madsen, 168 Wn.2d 496, 504, 229 P.3d 714 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

Criminal defendants have the right to self representation under the Washington Constitution, article I, section 22 (amend. 10), and the United States Constitution, amendments VI and XIV. Madsen, 168 Wn.2d at 503; Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). However, the right to self representation is not self-executing. State v. Woods, 143 Wn.2d 561, 586, 23 P.3d 1046 (2001). It is well established that a defendant's request to proceed pro se must be unequivocal and timely. State v. DeWeese, 117 Wn.2d 369, 377, 816 P.2d 1 (1991). Where a defendant's request for self representation is untimely, "the right is relinquished

and the matter of the defendant's representation is left to the discretion of the trial judge." DeWeese, 117 Wn.2d at 377.

The trial court's discretion to grant or deny a motion to proceed depends on when the request is made. If the demand for self representation is made " 'well before the trial or hearing and unaccompanied by a motion for a continuance, the right of self representation exists as a matter of law.' " Madsen, 168 Wn.2d at 508[4] (quoting State v. Barker, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994)). If the request is made " 'as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter.' " Madsen, 168 Wn.2d at 508 (quoting Barker, 75 Wn. App. at 241). Finally, if the defendant makes his request " 'during the trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court.' " Madsen, 168 Wn.2d at 508 (quoting Barker, 75 Wn. App. at 241).

Arthur argues that because he made his request before trial, the court's discretion was limited. The State argues that because Arthur made his request after the trial began, the decision rested within the informed discretion of the trial court.

We need not decide whether trial had begun. Whether the motion to proceed pro se was made immediately before trial or during trial, Arthur does not dispute that the trial court had at least a "measure of discretion" to deny the untimely request for self representation.

Here, trial had already been continued three times. Trial was scheduled to begin and the State's two subpoenaed witnesses, James and Charlotte Arthur, were present and ready to testify. James had difficulty getting to the courthouse because he had gout

---

[4] (Emphasis omitted.)

and was confined to a wheelchair with "extremely swollen" legs. Charlotte was present at the courthouse for the second day in a row. Only after the court heard preliminary motions, conducted a colloquy on Arthur's jury trial waiver, and admitted several exhibits did Arthur ask to represent himself for the first time. Arthur also asked for a continuance. Arthur's attorney was prepared to represent him. The court did not abuse its discretion by denying Arthur's motion to proceed pro se.

Affirmed.

WE CONCUR: