FILED
COURT OF APPEALS
DIVISION II

2015 JAN 27 AM 8: 49

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44725-8-II |
| Respondent, | |
| v. | |
| MICHAEL NELSON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Michael Nelson was convicted and sentenced for first degree robbery and unlawful possession of a firearm. He alleges that (1) the parties' exercise of peremptory challenges in writing violated his public trial right, and (2) the trial court abused its discretion in denying his request to represent himself on the second day of trial. Nelson's Statement of Additional Grounds (SAG) alleges that defense counsel provided ineffective assistance in several respects and that the trial court erred by incorrectly calculating Nelson's offender score.

We hold that (1) peremptory challenges do not implicate the public trial right, (2) the trial court had discretion to deny Nelson's request to represent himself because it was untimely, and (3) Nelson fails to show a claim for ineffective assistance of counsel. We decline to address Nelson's offender score contention because it relies on facts outside the record. Accordingly, we affirm Nelson's convictions and sentence.

## FACTS

Nelson, along with Theo Burke and another unidentified individual, offered a person a ride in their car. Nelson pointed a revolver at the person and took his wallet. The other individuals took the person's cell phone, hat, and jacket. The State charged Nelson with first degree robbery and first degree unlawful possession of a firearm.

*Peremptory Challenges*

At trial, the parties conducted voir dire of the prospective jurors. The trial court then explained the peremptory challenge process as follows:

> [The parties] have a piece of paper. They will write down their peremptory challenges, and they will pass that piece of paper back and forth. And when they exercise up to the number that they are allowed, then they will bring a sheet of paper forward to me. I will go through their work and I will announce the names of people that will serve as jurors and alternate jurors in this case.

Report of Proceedings (RP) (Feb. 28, 2013) at 127. A sidebar conference was held, and then the trial court announced in open court the selected jurors and alternate jurors. The trial court did not consider the *Bone-Club*[1] factors before holding the sidebar. The list of peremptory challenges was filed with the court later that same day.

*Request for Self-Representation*

During trial, Nelson's attorney presented an opening statement, cross-examined the State's witnesses, and objected to improper questioning. The attorney performed similarly on the second day of trial. At a recess on the second day, Nelson told the trial court that he knew more about his case than his attorney and wanted to cross-examine the State's witnesses. The

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) (establishing the five criteria a trial court must consider before closing a courtroom proceeding to the public).

2

trial court asked Nelson if he had any formal legal training, and Nelson admitted he did not. But Nelson persisted and stated, "[T]he questions that I have, they're specific, and I feel that they will get the truth out of the witness." RP (Mar. 4, 2013) at 152-53.

The trial court expressed concern that Nelson would implicate himself, and strongly cautioned him against questioning witnesses himself. However, Nelson continued to express frustration with his defense attorney's cross-examination of the State's witnesses. The following exchange then occurred:

> Court: [Y]ou have the right to a lawyer of your own choice, if you hired a lawyer. You don't have the right to an appointment of a lawyer of your own choice, nor do you have the right to switch attorneys whenever you decide that an attorney is giving you advice that you don't want to hear and not proceeding in a manner that you think is appropriate.
> At this point in time, if you are asking me to represent yourself in this proceeding entirely, examine witnesses - -
>
> Nelson: Yes.
>
> Court: - - prepare jury instructions, argue the law and the facts to the jury and entirely take over the case?
>
> Nelson: Yes.
>
> Court: Well, at this point in time . . . based on everything I have seen and heard, that is not in your best interest. You are not sufficiently trained in the law. You have a very experienced attorney.
> Like I say, maybe he's giving you some advice that you don't want to hear. Sometimes attorneys can't do anything to alter evidence that's presented. That doesn't necessarily mean that you can proceed on your own.
> I am reluctant to ask you what kind of questions you wanted to ask of these witnesses because, once again, I'd hate you to say anything that implicated yourself.

RP (Mar. 4, 2013) at 156-57.

44725-8-II

Nelson then reiterated his request to cross-examine one of the State's witnesses.

The trial court asked what Nelson would ask the witness, Nelson gave a short reply, and

the trial court stated:

> I am going to stop you, Mr. Nelson, because you are making statements now that
> implicate yourself as an accomplice or as a perpetrator of the offense. . . .You
> have the right to impeach things that [a witness] said . . . through other witnesses.
> But based on what you are saying now, that certainly is - - I can understand why
> [your attorney] would not want to pursue a line of inquiry that further implicates
> knowledge that you had.
>     [I]t's really apparent to me that you are not prepared through education,
> training or experience to represent yourself or cross-examine the witness. So I am
> not going to allow you to do that at this time.

RP (Mar. 4, 2013) at 158-59.

*Verdict and Sentence*

Nelson's trial continued and he was found guilty on both charges. At sentencing

Nelson's prior criminal history was submitted to the trial court. He had several prior felony

convictions, including four 2006 convictions: two for possession of a controlled substance and

two for conspiracy to deliver a controlled substance. The trial court calculated that Nelson's

offender score for his current offenses was eight. The trial court sentenced Nelson to 168-204

months on the first degree robbery charge and 77-102 months on the unlawful possession of a

firearm charge.

Nelson appeals.

ANALYSIS

A.    PUBLIC TRIAL RIGHT

Nelson argues that the trial court violated his right to a public trial by allowing the parties

to exercise peremptory challenges in writing. We recently addressed this issue in *State v. Marks*,

4

___ Wn. App. ___, 339 P.3d 196, 199-200 (2014), holding that (1) the exercise of peremptory challenges are not part of voir dire and therefore do not automatically implicate the public trial right, and (2) peremptory challenges do not satisfy the experience prong of the experience and logic test. We cited to our prior decision in *State v. Dunn*, which also held that peremptory challenges do not implicate the public trial right. 180 Wn. App. 570, 575, 321 P.3d 1283 (2014), *review denied,* ___ Wn.2d ___ (2015). Accordingly, we follow *Marks* and *Dunn* and hold that the trial court did not violate Nelson's public trial right by allowing the parties to conduct peremptory challenges in writing.

B.    RIGHT TO SELF-REPRESENTATION

Nelson argues that he was deprived of his constitutional right to self-representation when the trial court denied his request to represent himself on the second day of trial. We disagree.

Criminal defendants have an explicit right to self-representation under article I, section 22 of the Washington State Constitution and an implicit right under the Sixth Amendment to the United States Constitution. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010); *see also Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). This right is so fundamental that it is protected despite its potentially detrimental impact on both the defendant and the administration of justice. *Madsen*, 168 Wn.2d at 503. The unjustified denial of the right of self-representation requires reversal. *Id.*

But the right of a defendant to represent himself is not absolute or self-executing. *Id.* at 504. If a defendant asks to represent himself, then the trial court must determine whether the defendant's request is unequivocal and timely. *Id.* If the defendant's request is not equivocal or untimely, the trial court must determine whether the defendant's request is voluntary, knowing,

5

and intelligent. *Id.* Courts are required to indulge in every reasonable presumption against a defendant's waiver of his or her right to counsel. *Id.* We review a trial court's decision to deny a request for self-representation for an abuse of discretion. *Id.* at 504.

We assume without deciding that Nelson's request to represent himself was unequivocal. But even if a defendant makes an unequivocal request to represent himself, a trial court has broad discretion to grant or deny an untimely request. *State v. Stenson*, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997).

Whether a request is timely, and the extent of the trial court's discretion in considering such a request, is determined on a continuum. *Madsen*, 168 Wn.2d at 508. Our Supreme Court in *Madsen* stated:

> "If the demand for self-representation is made (1) well before the trial or hearing and unaccompanied by a motion for a continuance, the right of self-representation exists as a matter of law; (2) as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter; and (3) during the trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court."

*Id.* (quoting *State v. Barker*, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994)) (emphasis omitted).

Nelson made his request to represent himself on the second day of trial. We hold that the third *Madsen* rule applies. Therefore, we acknowledge that the decision whether to grant or deny Nelson's request to represent himself rested largely in the trial court's discretion.

Factors to be considered in assessing a request for self-representation during trial include:

> "[T]he quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion."

6

*State v. Fritz*, 21 Wn. App. 354, 363, 585 P.2d 173 (1978) (quoting *People v. Windham*, 19 Cal. 3d 121, 128-29, 560 P.2d 1187 (1977)). Absent "substantial reasons," a last minute request for self-representation "should generally be denied, especially if the granting of such a request may result in delay of the trial." *State v. Garcia*, 92 Wn.2d 647, 656, 600 P.2d 1010 (1979).

The application of the relevant factors here does not suggest that the trial court abused its discretion. There is nothing in the record to suggest that Nelson received anything short of proper representation.[2] Nelson's apparent reason to represent himself – his frustration with his attorney's unwillingness to ask the State's witnesses the questions Nelson wanted him to ask – is not particularly compelling. And Nelson's request was made in the middle of a jury trial after the jury had already heard testimony from two of the State's witnesses.

Because Nelson made his request to represent himself after the second day of trial, it was untimely and the trial court had broad discretion whether to grant or deny it. Nelson did not provide substantial reasons to grant his last minute request. Accordingly, we hold that the trial court did not abuse its discretion in denying Nelson's request to represent himself.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

In his SAG, Nelson argues that he was denied his right to effective assistance of counsel because defense counsel allegedly failed to (1) contact Nelson for a three-month period

---

[2] Our analysis is not helped by the second *Fritz* factor. The State contends Nelson had a proclivity for substitution of counsel, but the record does not support this. Nelson's prior attorneys appear to have withdrawn due to a conflict of interest, or for an unspecified reason after Nelson's mother attempted to bribe witnesses to alter their testimony. There is no evidence that Nelson caused his attorneys to withdraw or requested that they withdraw.

regarding his case, (2) impeach a witness who testified against Nelson about an alleged videotaped confession, and (3) show Nelson a video of a witness's confession.

### 1. Legal Principles

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Id.* at 34. Reasonable probability in this context means a probability sufficient to undermine confidence of the outcome. *Id.*

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel's performance was reasonable. *Id.* at 33. A claim that trial counsel provided ineffective assistance does not survive if counsel's conduct can be characterized as legitimate trial strategy or tactics. *Id.* at 33. To rebut the strong presumption that counsel's performance was effective, the defendant bears the burden of establishing the absence of any " ' *conceivable* legitimate tactic explaining counsel's performance.' " *Id.* at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

8

2.    Lack of Contact

Before trial, Nelson alleged that his attorney did not discuss trial strategy with him outside of court and did not tell him about the State's potential plea deals. His defense attorney denied the allegations, telling the trial court that he had met with Nelson on several occasions and had discussed the merits of his case with him. Similarly, Nelson claims in his SAG that his defense counsel did not contact him about his case for a three-month period, and generally failed to keep him informed about his case.

Here, there is no evidence in the record that substantiates Nelson's claims that his attorney failed to contact him about his case, and therefore Nelson's claims rely on facts outside the record. We do not address claims based on facts outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995). Accordingly, we do not address this claim.

3.    Failure to Impeach

Nelson argues that his trial attorney was ineffective because he allegedly failed to impeach Burke, one of the State's witnesses who testified against Nelson. We hold that defense counsel's alleged failure to impeach Burke presents a matter of trial strategy and therefore was not deficient.

Nelson's SAG references Burke's videotaped confession in which Nelson contends Burke confessed to taking the victim's wallet. The record does not show what Burke actually said in the videotape. But the record does show that Nelson's attorney interviewed Burke prior to trial, and that his interview was consistent with what Burke stated in the videotape. At trial, Nelson's attorney impeached Burke by eliciting his testimony that Burke made a deal with the

9

State for a reduced charge and sentence in exchange for testifying against Nelson. Moreover, Nelson's attorney questioned Burke about his alleged videotaped confession – Burke admitted to taking the victim's cell phone but not the victim's wallet.

Here, there is no evidence in the record to support Nelson's claim regarding Burke's confession. But to the extent defense counsel's performance might be deficient, Nelson also does not show that any error affected the outcome of his trial. Therefore, we hold that this claim has no merit.

### 4. Failure to Show Video

During trial, Nelson alleged that his attorney had failed to show him Burke's videotaped testimony against him. In his SAG, Nelson claims that his attorney's failure to show him the videotape constituted ineffective assistance of counsel. The record shows that as of the first day of Nelson's second trial, his defense attorney had not shown him Burke's videotape. The trial court instructed Nelson's attorney to show him the videotape either that day or the next. There is no evidence in the record as to whether or not Nelson was actually shown the video.

However, even if we presume this was deficient attorney conduct, Nelson fails to show how this was prejudicial to the outcome of his trial. Accordingly, we hold that this claim fails.

### D. CLAIMED SENTENCING ERROR

Nelson's SAG asserts that the trial court erred in calculating his offender score by including two prior convictions that constituted the same criminal conduct. We hold that we do not have a sufficient record to review this assignment of error.

When a defendant is convicted of multiple crimes, each is treated like a prior conviction for purposes of calculating the defendant's offender score unless the crimes constitute the same

10

criminal conduct. RCW 9.94A.589(1)(a). A sentencing court must find that two or more crimes constitute the same criminal conduct if they "require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id.* " 'If any one element is missing, multiple offenses cannot be said to encompass the same criminal conduct, and they must be counted separately in calculating the offender score.' " *State v. Garza-Villarreal*, 123 Wn.2d 42, 47, 864 P.2d 1378 (1993) (quoting *State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992)).

In *State v. Deharo*, our Supreme Court examined a defendant's convictions of possession with intent to deliver heroin and conspiracy to deliver. 136 Wn.2d 856, 857, 966 P.2d 1269 (1998). The defendant's convictions were based solely on his possession of six bindles of heroin at the time of arrest. *Id.* at 857. The defendant argued that the two counts encompassed the same criminal conduct, and our Supreme Court agreed. *Id.* at 857-58. The court concluded that the objective intent underlying the two charges – to deliver the heroin in the men's possession – was the same. *Id.* at 859. According to the court, the result might have been different if the record had established a distinction between the time or place of the two charges. *Id.* at 858. But because there was unity of intent, time, place, and victim, the two charges were considered the same criminal conduct for sentencing purposes. *Id.* at 858-59.

Here, the record is insufficient for us to determine whether Nelson's possession and conspiracy convictions constitute the same criminal conduct. The record does not show at what time or at what place Nelson's two convictions for conspiracy and possession took place. It is possible that either of Nelson's conspiracy convictions could have been completed at a time separate from his possession convictions, which would show Nelson's convictions were not the same criminal conduct. Alternatively, like the situation in *Deharo*, Nelson's two separate

11

convictions for possession and conspiracy could have been based solely on the same conduct, which could have established that the two convictions were the same criminal conduct.

Here, Nelson's SAG contention refers to facts outside the record that we cannot review. *McFarland*, 127 Wn.2d at 337-38 (a personal restraint petition is the appropriate method to obtain review of matters outside the record). Therefore we do not further consider this issue.

We affirm Nelson's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, C.J.

SUTTON, J.