[Nos. 17150-3-II; 17282-8-II.    Division Two.    October 16, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JESUS CANEDO-ASTORGA, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. ROGER RAMON NARANJO, *Appellant*.

*Thomas E. Doyle* and *Robert M. Quillian,* for appellants (appointed counsel for appeal).

*Nelson E. Hunt, Prosecuting Attorney,* and *James K. Gazori* and *Douglas E. Jensen, Deputies,* for respondent.

MORGAN, J. — Jesus Canedo-Astorga (hereafter Canedo) and Roger Ramon Naranjo appeal their convictions for delivery of cocaine. We affirm.

On February 4, 1993, the State charged Canedo and Naranjo with delivery of cocaine. The court appointed attorney Lawler to represent Canedo, and attorney Randolph to represent Naranjo.

On March 17, 1993, Canedo moved for a new attorney. At the same time, Lawler moved to withdraw, asserting that communication with his client was "impossible." The court denied both motions.

On March 22, 1993, Randolph moved to withdraw as Naranjo's attorney, because he had formerly represented an informant in the case. The court granted the motion and substituted attorney McConnell.

Also on March 22, 1993, Canedo told the court that he wanted to represent himself rather than continue to be represented by Lawler. The State asked the court to appoint standby counsel if it was going to permit Canedo to represent himself. The court questioned Canedo as follows:

THE COURT: Are you asking the Court to allow you to represent yourself in this case Mr. Canedo?

MR. CANEDO: . . . I want to represent myself because I don't have any — another choice or any help. I have to defend myself, whatever I can, you know. . . .

THE COURT: Well, have you ever represented yourself in court before?

MR. CANEDO: I never had any criminal problems before. I never went into the court like this. . . .

THE COURT: Have you ever had any legal training at all?

MR. CANEDO: Well, . . . I learned a little bit about [the] law of Mexico, pretty much comparable to the United States, too, you know.

THE COURT: Are you familiar with the rules of criminal procedure in the State of Washington?

MR. CANEDO: No, not really. . . .

THE COURT: Do you know how a jury trial is conducted?

MR. CANEDO: A friend of mine, the family, is jury trial that I could ask questions, like what is like jury nullification. He tell me that and he tell me about jury nullification . . . . My lawyer, he also tell me that I can — he no can help me. . . .

THE COURT: Can you read the English language?

MR. CANEDO: I can read pretty much of the language, but I no can write it very well. I can read and understand it very well, most of it, but no can write too good. . . .[1]

The court went on to inform Canedo that "[i]f you're going to represent yourself, you're held to the same standard as an attorney when you represent yourself."[2] The court also advised that

when you get into the trial you have to be familiar with trial procedures, you have to start out initially being able to ask jurors questions on voir dire so that you can get an impartial jury and what you feel is a fair jury. Then you have to be able to cross-examine witnesses that the State calls and ask them questions. And you have to be able to call your own witnesses and have them subpoenaed and ask them questions. Do you feel you can do that?[3]

Canedo answered affirmatively and persisted in his desire to represent himself. Nevertheless, the court took the motion under advisement until the next hearing.

The next hearing was on March 25. The court started by indicating it would deny Canedo's motion to represent himself. The reason, it said, was that Canedo lacked the skills needed to present the case to a jury. Both the prosecutor and Lawler responded by saying Canedo had the right to represent himself as long as he knowingly and

---

[1]Report of Proceedings (Mar. 22, 1993) at 47-48.

[2]Report of Proceedings (Mar. 22, 1993) at 49.

[3]Report of Proceedings (Mar. 22, 1993) at 52-53.

voluntarily chose to do so. After considering these responses, the court granted the motion and designated Lawler to act as standby counsel.

Naranjo then moved for separate trials. The motion was heard on April 1, 1993, with counsel for Naranjo claiming that Canedo "is not in any position, shape, or form to be able to defend himself,"[4] and that severance is "in the interest of justice and fairness."[5] The court denied the motion to sever, stating that "the law in the State of Washington is that there will be no severance unless prejudice can be established through the moving parties. I don't find in this case that prejudice would exist."[6]

On April 14, 1993, the court commenced a jury trial at which Canedo and Naranjo were codefendants.[7] On the second day of trial, out of the presence of the jury, Canedo asked the court to clarify Lawler's role as standby counsel. The judge answered:

> Now, Mr. Lawler is your standby counsel. He is available for consultation if you want to talk to him, but as standby counsel, that's all he is. He cannot actively represent you at this trial.[8]

Naranjo then moved for the reappointment of Lawler as Canedo's attorney and, again, for severance. He asserted that "[i]t should be obvious by now [Canedo] cannot adequately defend himself."[9] The judge asked Canedo to respond, and the following colloquy occurred:

> THE COURT: . . . [D]o you have a response to [Naranjo's] motion?

---

[4]Report of Proceedings (Apr. 1, 1993) at 6.

[5]Report of Proceedings (Apr. 1, 1993) at 13.

[6]Report of Proceedings (Apr. 1, 1993) at 13.

[7]By this time, Canedo had been through two trials not in issue here. Lawler had represented him in one in which the charge was first degree assault. Canedo had represented himself in the other in which the charge was a drug offense. It appears that both trials were held in late March or early April.

[8]Report of Proceedings (Apr. 15, 1993) at 179.

[9]Report of Proceedings (Apr. 15, 1993) at 182.

MR. CANEDO: About whether or not Mr. Lawler can help me?

THE COURT: Take over as your attorney?

MR. CANEDO: That would be fine. I'm not waiving, but if he can help me also it is a lot better as I told you from the start.

THE COURT: Mr. Canedo, either Mr. Lawler represents you as an attorney or you represent yourself. But if he represents you then he takes over active participation in the trial as your attorney and he asks the questions and does the arguing.

MR. CANEDO: That's fine. Let him take charge of the case.[10]

The court then asked Lawler to comment. Lawler stated:

Well, this obviously puts me in a difficult position by having to take over the case halfway through. I am familiar with the facts of the case, however, I did not prepare this case in the last week or so with an eye . . . toward trying it. . . . I think if I'm going to be appointed back at this point to represent Mr. Canedo, then I would ask that the trial be stopped and there be a continuance until I have such time as I need to consult with Mr. Canedo to determine what it is exactly that he wants, and that would not be a short process, I'm sure, given the history of this case, and also to interview witnesses which I did not do after Mr. Canedo took over the case.[11]

After considering these remarks, the court decided that Canedo would continue to represent himself, and that Lawler would remain as standby counsel. The trial proceeded, and the jury found both defendants guilty.

I

Canedo's only contention on appeal is that the trial

[10]Report of Proceedings (Apr. 15, 1993) at 183-84.

[11]Report of Proceedings (Apr. 15, 1993) at 185-86.

court was required to grant his midtrial request for reappointment of counsel. The reason, he says, is that by the time he made his request for reappointment, "he had demonstrated that he lacked the ability to comply with the applicable rules of procedure and substantive law."[12]

In *Godinez v. Moran*, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993), the United States Supreme Court described the federal due process standards that control a motion for self-representation. A state can adopt more stringent standards,[13] but Canedo does not argue that Washington has done so.

■ The *Godinez* court distinguished between the ability to choose whether to have a lawyer, on the one hand, and the ability to act as a lawyer, on the other. It said in pertinent part:

> [T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself. In *Faretta v. California*, we held that a defendant choosing self-representation must do so "competently and intelligently," but we made it clear that the defendant's "technical legal knowledge" is "not relevant" to the determination whether he is competent to waive his right to counsel, and we emphasized that although the defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored." Thus, while "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts,". . . a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation.[14]

Utilizing this distinction, the *Godinez* court held that for purposes of federal due process, a defendant validly assumes the risks of self-representation if he or she: (1) is competent to stand trial; and (2) makes a knowing, volun-

---

[12]Br. of Appellant Canedo at 6.

[13]*Godinez*, 113 S. Ct. at 2688.

[14]*Godinez*, 113 S. Ct. at 2687 (citations and footnotes omitted).

tary and intelligent choice to waive counsel. The court said that "when a defendant seeks to waive his right to counsel, a determination that he is competent to stand trial is not enough; the waiver must also be intelligent and voluntary before it can be accepted."[15]

After a competent defendant has made a valid waiver, reappointment is a matter for the discretion of the trial court. Thus, "a trial court must establish that a defendant, in choosing to proceed pro se, makes a knowing and intelligent waiver of the right to counsel."[16] But "[o]nce an unequivocal waiver of counsel has been made, the defendant may not later demand the assistance of counsel as a matter of right since reappointment is wholly within the discretion of the trial court."[17]

In exercising discretion, a trial court should consider all the facts and circumstances of the case. Because "[s]elf-representation is a grave undertaking, one not to be encouraged,"[18] the request for reappointment should be granted absent reasons to deny. In some cases, however, there will be reasons to deny — for example, that the request comes on the eve of or during trial, and will delay or interrupt the trial if granted.[19]

Although Canedo argues to the contrary, the discretion of a trial court is not destroyed by a defendant's ineptitude, even when the ineptitude has been convincingly demonstrated. Just as ineptitude "does not in itself justify the denial of a defendant's Sixth Amendment right to represent himself,"[20] ineptitude does not by itself mandate

---

[15]*Godinez*, 113 S. Ct. at 2688; *see also Godinez* 113 S. Ct. at 2687.

[16]*State v. DeWeese*, 117 Wn.2d 369, 377, 816 P.2d 1 (1991).

[17]*DeWeese*, 117 Wn.2d at 376-77.

[18]*DeWeese*, 117 Wn.2d at 379.

[19]*DeWeese; cf. State v. Chase*, 59 Wn. App. 501, 799 P.2d 272 (1990).

[20]*United States v. Arlt*, 41 F.3d 516, 518 (9th Cir. 1994); *see also State v. Fritz*, 21 Wn. App. 354, 360, 585 P.2d 173, 98 A.L.R.3d 1 (1978) ("in assessing the knowledgeable exercise of a defendant's right of self-representation, a showing

the restoration of a defendant's Sixth Amendment right to counsel.

The reason relates to assumption of risk. Because a valid waiver of counsel must be knowing, voluntary and intelligent, the defendant who makes a valid waiver of counsel assumes the risk of ineptitude in those same ways, i.e., knowingly, voluntarily and intelligently. In view of this purposeful assumption of risk, the fact the risk later comes to pass, often just as predicted, does not by itself require reappointment. Nor does it divest the trial court of the discretion to consider all the circumstances that exist when the request for reappointment is made. To hold otherwise would subject trial courts to "manipulative vacillations by defendants regarding representation."[21]

Here, Canedo does not contend that he was incompetent to stand trial, or that he did not act knowingly, voluntarily and intelligently when, before trial, he chose to proceed without counsel. His initial waiver of counsel was valid, and the trial court had discretion to grant or deny his request for reappointment.

Nor did the trial court abuse its discretion by denying the request for reappointment. The request was made in the midst of a jury trial. Lawler responded by asserting "that the trial be stopped and there be a continuance until I have such time as I need to consult with Mr. Canedo to determine what it is exactly that he wants, and that would not be a short process."[22] Canedo continued to have standby counsel available to answer his questions, and he showed no reason for reappointment other than his own ineptitude — the very reason the trial judge had tried to dissuade him from representing himself in the first place. The trial court acted within its discretion when it refused

of technical legal knowledge is not required"), *review denied*, 92 Wn.2d 1002 (1979).

[21]*DeWeese*, 117 Wn.2d at 376.

[22]Report of Proceedings (Apr. 15, 1993) at 185-86.

to abort or interrupt the trial, and Canedo has not shown that his right to counsel was violated.

## II

Naranjo's only contention on appeal is that Canedo's self-representation "constitute[d] improper conduct before the jury of such magnitude as to unfairly prejudice the right of defendant Naranjo to a fair trial."[23] Therefore, he says, the trial court erred by denying his motions for severance.

■■ Motions for severance are committed to the sound discretion of the trial court.[24] The defendant has the burden of demonstrating that a joint trial was so manifestly prejudicial as to outweigh the concern for judicial economy.[25] To meet this burden, the defendant must point to specific prejudice.[26]

■■ Although Washington has no cases analyzing the effect of one defendant's self-representation on another defendant's right to severance, a number of federal cases hold that a trial involving a pro se defendant and a represented codefendant is not prejudicial per se and thus does not generate automatic severance.[27] Generally, these cases hold that severance is required only when the moving codefendant shows that a joint trial will cause specific prejudice.[28] On the other side of the coin, however, they recognize that a joint trial is "pregnant with the possibil-

---

[23]Br. of Appellant Naranjo at 18-19.

[24]*State v. Philips,* 108 Wn.2d 627, 640, 741 P.2d 24 (1987).

[25]*Philips,* 108 Wn.2d at 640.

[26]*State v. Grisby,* 97 Wn.2d 493, 507, 647 P.2d 6 (1982), *cert. denied, Frazier v. Washington,* 459 U.S. 1211 (1983).

[27]*Person v. Miller,* 854 F.2d 656, 665, 96 A.L.R. Fed. 495 (4th Cir. 1988), *cert. denied,* 489 U.S. 1011 (1989); *United States v. Oglesby,* 764 F.2d 1273, 1275-76 (7th Cir. 1985); *United States v. Veteto,* 701 F.2d 136, 138-39 (11th Cir.) *cert. denied,* 464 U.S. 1212 and 464 U.S. 839 (1983); *United States v. Sacco,* 563 F.2d 552, 555-56 (2d Cir. 1977), *cert. denied,* 434 U.S. 1039 (1978).

[28]*Oglesby,* 764 F.2d at 1276.

ity of prejudice,"[29] and recommend that prejudice be minimized by using safeguards such as

> appointing standby counsel, warning the *pro se* defendant that he will be held to the rules of law and evidence and that he should refrain from speaking in the first person in his comments on the evidence, and instructing the jury prior to the closing remarks, during summation, and in final instructions, that nothing the lawyer said is evidence in this case. [T]he . . . judge should also make clear to the jury at the outset that anything the *pro se* defendant says in his 'lawyer' role is not evidence and should instruct the pro se defendant beforehand that he should both avoid reference to co-defendants in any opening statement or summation without prior permission of the court and refrain from commenting on matters not in evidence or solely within his personal knowledge or belief.[30]

Generally, a defendant demonstrates specific prejudice by showing

> (1) antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive; (2) a massive and complex quantity of evidence making it almost impossible for the jury to separate evidence as it related to each defendant when determining each defendant's innocence or guilt; (3) a co-defendant's statement inculpating the moving defendant; (4) or gross disparity in the weight of the evidence against the defendants.[31]

Naranjo does not contend that any such difficulties existed at his trial. The trial judge appointed standby counsel, repeatedly warned Canedo that he would be held to the same standards as an attorney, and sustained objections when Canedo was not adhering to the rules of evidence and criminal procedure. He also instructed the jury to evaluate the guilt of each defendant separately. These safeguards were appropriate, and Naranjo has not shown

---

[29]*Veteto*, 701 F.2d at 139.

[30]*Oglesby*, 764 F.2d at 1276 (quoting *Veteto*, 701 F.2d at 138-39).

[31]*Oglesby*, 764 F.2d at 1276 (citations omitted).

specific prejudice. We conclude the trial court did not abuse its discretion by denying severance.

Affirmed.

HOUGHTON, A.C.J., and BRIDGEWATER, J., concur.

Review denied at 128 Wn.2d 1025 (1996).