# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,

    Respondent,

v.

SHAWN LEE ALEXANDER LLOYD,

    Appellant.

No. 69526-6-I

UNPUBLISHED OPINION

FILED: November 10, 2014

VERELLEN, J. — The trial court did not violate Shawn Lloyd's right to counsel by requiring him to proceed pro se after he waived his right to counsel to avoid representation of appointed counsel with whom he was dissatisfied. Lloyd did not offer sufficient reasons to justify appointing substitute counsel and his request to reinstate appointed counsel was made on the day of trial. Thus, the trial court's denial of his requests for reappointment of substitute counsel and reinstatement of appointed counsel were a proper exercise of discretion. Accordingly, we affirm.

## FACTS

On October 18, 2010, Officer Steve Kerzman was on duty when he noticed a car parked on a dead-end street that was known for abandoned stolen vehicles, narcotic use, and illegal dumping of trash. He parked behind the car and contacted Shawn Lloyd, who was seated in the driver's seat. Kerzman explained to Lloyd that he was not allowed to park on that street, pointing to the posted street sign that prohibited parking

there. When Kerzman asked to see his identification, Lloyd became uncooperative. Dispatch informed Kerzman that the car was registered as a total loss, was unsafe, and was therefore illegally on the road. Lloyd eventually gave his license to Kerzman, who determined that a warrant was out for his arrest.

Kerzman then placed Lloyd under arrest and called a tow truck to impound the car. Before the car was towed, Kerzman inventoried its contents and discovered two small plastic bags of suspected methamphetamine on top of other items in the unlocked center console. He then stopped the inventory and obtained a search warrant for the car. The search warrant was executed, revealing two glass smoking pipes, cash, and a cellphone. Forensic testing confirmed that the substance in the plastic bags was methamphetamine.

The State charged Lloyd with possession of methamphetamine, a violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. Paul Vernon was appointed to represent Lloyd. On March, 21, 2012, Lloyd appeared before Judge Kessler at a pretrial hearing in the criminal presiding court and asked to discharge Vernon and represent himself. Vernon was not present at the hearing, but another lawyer, Leo Hamaji, was present and standing in for Vernon. Hamaji confirmed to the court that Lloyd was intent on discharging counsel. The court told Lloyd that he could have a week if he wished to hire private counsel. Lloyd agreed, and the court the continued the hearing for one week to allow him to hire private counsel.

On March 28, 2012, Lloyd appeared in the criminal presiding court before Judge Hayden. Lloyd was with counsel Mark Adair, who was standing in for appointed counsel Vernon. Adair informed the court that Lloyd had been unable to secure private

counsel and wished to make a motion to proceed pro se. Lloyd confirmed to the court that this was his preference.

The court then proceeded to warn him of the pitfalls of representing himself at trial and asked him about his experience and knowledge of the trial process and the law. The court further warned him that if he waived the right, once he got to trial, he would be expected to proceed pro se. The following colloquy ensued:

COURT: You understand if I allow you to go pro se, then once you get into trial, you're sent down to the trial judge, and if you don't understand what's happening, you don't understand what you're supposed to do, the trial judge is going to say, "Mr. Lloyd, you've kind of made your bed, you're now going to sleep in it." Do you understand that?

LLOYD: Yes, Your Honor.

COURT: You don't get to go back and say, "I want a continuance now, I want to start all over again." You sure you want to do this?

LLOYD: The counsel that I had representing me was absolutely inadequate. And if that is the counsel that I will be assigned to, I will represent myself.

. . . .

COURT: Well, you're making a big mistake.

LLOYD: And that may be, but --

COURT: You don't know the rules of evidence. You have no legal training. You'll be held to the rules that are applicable to your lawyer. And you're in no way prepared to represent yourself. But you have constitutional right to do it. I can't prevent you from doing it. All I can do is do my level best to persuade you not to. You're sure you want to do this?

LLOYD: If my only option is Mr. Vernon or myself, I will take Shawn Lloyd any day.[1]

---

[1] Report of Proceedings (RP) (Mar. 28, 2012) at 11-12.

3

Lloyd was then informed of the charge against him and its penalties, after which he told the court that he still wished to represent himself.

Adair then addressed the court, indicating that it was unclear whether Lloyd intended to request the assistance of standby counsel. Lloyd told the court he wished to exercise that option, and the court said Vernon could serve as standby counsel, to which Lloyd agreed. The court then signed an order allowing Lloyd to proceed pro se, with Vernon serving as standby counsel. Lloyd then asked to set the case for trial.

On July 20, 2012, Lloyd appeared before Judge Kessler in the criminal presiding court with standby counsel Vernon and made a motion to have a new public defender appointed. When the court asked Lloyd if he was requesting new standby counsel, he stated that he was actually asking for "new counsel."[2] The court then asked if he wished to give up his right to proceed pro se, and he answered, "Yes, Your Honor. If I am allowed to have new counsel, Your Honor. . . . If that's not granted, I will represent myself."[3] The court denied the motion.

On August 14, 2012, Lloyd appeared with standby counsel Vernon for a preliminary hearing on motions in limine and CrR 3.5 and CrR 3.6 motions to suppress evidence. Partway through the CrR 3.5 hearing, Lloyd asked the court if he could "have an attorney reinstated in this matter" because "due to the complications," he was not qualified to represent himself.[4] The court asked Vernon if he was prepared to proceed as Lloyd's counsel. Vernon responded that he was not prepared to proceed that day,

---

[2] RP (July 20, 2012) at 16.

[3] Id.

[4] RP (Aug. 14, 2012) at 100.

4

but if the court reappointed him as counsel, he would "be happy to take the case."[5] The court then determined that Lloyd's request should be sent back to the criminal presiding court which had made the previous rulings on Lloyd's requests to proceed pro se and to appoint a new public defender after waiving his right to counsel.

That same day, Lloyd appeared before Judge Kessler in the criminal presiding court and made his request that counsel be reinstated. He explained that "due to several documented disabilities," he was unable to adequately represent himself as he had initially thought.[6] The court then asked Vernon if he was prepared to go to trial. Vernon responded that he was not ready to go to trial that day because he had a number of things to do to prepare. The court denied the motion, noting, "You made your decision. . . . Judge Hayden told you how difficult this was going to be."[7] Lloyd continued to argue that he made the poor decision to represent himself because he did not have a sound mindset at the time. The court found:

> Well, I agree with you, it was a poor decision. But Mr. Lloyd has appeared before the court since that decision to represent himself on June 15th, July 20th and then . . . yesterday, and the court believes Mr. Lloyd, while having made a poor decision, was mentally competent, sufficiently mentally competent to make the decision to waive his right to counsel and to represent himself.[8]

The court then directed Lloyd to return to the trial court.

When Lloyd and Vernon returned to the trial court and informed the court that the request to reinstate counsel was denied, the court initially stated that it disagreed with

---

[5] Id. at 101.

[6] Id. at 105.

[7] Id. at 106-07.

[8] Id. at 108.

the presiding court's ruling and that it was going forward with Vernon representing Lloyd. Vernon then told the court that he could not ethically represent Lloyd under the circumstances, having not prepared for trial. The prosecutor interjected, objecting to what she viewed as a "delay tactic" and arguing that Lloyd "made this decision."[9] The prosecutor told the court that Lloyd had five months to prepare after making the decision to waive counsel and proceed pro se and that while he may have asked for counsel to be reappointed at a previous hearing, once he found out that Vernon would be his appointed counsel, he chose to proceed pro se.

The trial court agreed with the prosecutor and required Lloyd to proceed pro se, stating, "You have made choices, and apparently there are consequences."[10] When the hearing resumed, the court confirmed that Vernon was not reinstated as counsel but was serving only as standby counsel, and Lloyd proceeded to represent himself. A jury found Lloyd guilty as charged.

Lloyd appeals.

## ANALYSIS

Lloyd contends that the trial court's refusal to appoint him an attorney violated his constitutional right to assistance of counsel. He contends that because the request was made weeks before trial and there was no justification for denial of the request, the request should have been granted as a matter of law. We disagree.

Under the Sixth and Fourteenth Amendments, indigent defendants have the right to assistance of appointed counsel.[11] The Sixth Amendment also implicitly provides a

---

[9] Id. at 116.

[10] Id.

[11] Gideon v. Wainwright, 372 U.S. 335, 344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

6

right to self-representation,[12] and article I, section 22 of the Washington Constitution explicitly guarantees the right of a defendant to appear and defend in person or by counsel.[13] A waiver of the right to counsel is valid when made knowingly, voluntarily and intelligently.[14] "Once an unequivocal waiver of counsel has been made, the defendant may not later demand the assistance of counsel as a matter of right since reappointment is wholly within the discretion of the trial court."[15]

Lloyd argues that the trial court abused its discretion here because the request to reinstate appointed counsel occurred well before trial and was denied without justification. He relies on State v. Modica, where the court recognized that, as in the case of a request to proceed pro se, the trial court's discretion to grant or deny a request for reappointment of counsel "lies along a continuum that corresponds with the timeliness of the request."[16] As the court in Modica explained:

> If the request is made well before trial, the right exists as a matter of law.
> If the request is made shortly before trial, the existence of the right
> depends on the facts of the case with a measure of discretion reposing in
> the trial court. If made during trial, the right rests largely with in the
> informed discretion of the trial court.[17]

Lloyd also cites State v. Canedo-Astorga, where the court noted that "the request for reappointment should be granted absent reasons to deny."[18] In both Modica and

---

[12] Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[13] State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010).

[14] Bellevue v. Acrey, 103 Wn.2d 203, 208-09, 691 P.2d 957 (1984).

[15] State v. Deweese, 117 Wn.2d 369, 376-77, 816 P.2d 1 (1991).

[16] 136 Wn. App. 434, 443, 149 P.3d 446 (2006).

[17] Id.

[18] 79 Wn. App. 518, 525, 903 P.2d 500 (1995).

<u>Canedo-Astorga</u>, the court held that there was no abuse of discretion when the trial court denied a request for reappointment that was made during trial.[19]

Lloyd argues that under this standard, he had a right to reappointment as a matter of law when his request was made at the July 20 hearing, which was a few weeks before trial. Citing <u>State v. Deweese</u>,[20] the State contends that because this was a motion seeking substitute counsel, the trial court's denial of Lloyd's request for appointment of new counsel was a proper exercise of discretion. We agree.

In <u>Deweese</u>, the defendant sought, before trial, to discharge appointed counsel and have the court appoint another lawyer. The court denied his request for new appointed counsel and gave Deweese the option of either being represented by appointed counsel or representing himself. Deweese chose to represent himself and executed a valid waiver of his right to counsel.[21] At his request, appointed counsel served as standby counsel. During the trial, Deweese discharged standby counsel and again asked for representation by a new attorney. The trial court denied his request and he refused to participate in the trial.[22] On appeal, Deweese argued that the trial court denied him the right to assistance of counsel by refusing to appoint a new attorney and forcing him to choose between proceeding to trial with appointed counsel or appearing pro se.[23]

---

[19] 136 Wn. App. at 444; 79 Wn. App. at 526.

[20] 117 Wn.2d 369, 816 P.2d 1 (1991).

[21] <u>Id.</u> at 372-73.

[22] <u>Id.</u> at 374.

[23] <u>Id.</u> at 374.

The court rejected this argument, reiterating that a defendant's right to counsel of choice is limited in the interest of both fairness and efficient judicial administration and that the trial court has discretion to decide whether a defendant's dissatisfaction with appointed counsel is meritorious and justifies the appointment of new counsel.[24] The court also recognized that "[i]f the defendant chooses not to continue with appointed counsel, requiring such a defendant to proceed pro se does not violate the defendant's constitutional right to be represented by counsel."[25] The court then noted that Deweese chose to reject the assistance of an experienced defense attorney who had been appointed and concluded that Deweese's demands for a new attorney made both before and during trial were properly denied.[26] The court held as follows:

> We hold that after a valid denial of a defendant's request for appointment of substitute counsel, the trial court may require the defendant to choose between remaining with current counsel or proceeding pro se. After a defendant's valid *Faretta* waiver of counsel under these circumstances, the trial court is not obliged to appoint, or reappoint, counsel on the demand of the defendant. The matter is wholly within the trial court's discretion. Self-representation is a grave undertaking, one not to be encouraged. Its consequences, which nevertheless often work to the defendant's detriment, must nevertheless be borne by the defendant. When a criminal defendant chooses to represent himself and waive the assistance of counsel, the defendant is not entitled to special consideration and the inadequacy of the defendant cannot provide a basis for a new trial or an appeal.[27]

Similarly in State v. Sinclair, cited by the court in Deweese, the court rejected the defendant's argument that he was denied the right to counsel when he was denied a request for substitute appointed counsel and chose to represent himself rather than

---

[24] Id. at 376.

[25] Id.

[26] Id. at 378-79.

[27] Id. at 379.

proceeding with appointed counsel.[28] The court concluded that he presented to the trial court "no valid reason to replace appointed counsel," noting that when the court asked him why he was dissatisfied with appointed counsel,

> [h]e responded with a vague account of how counsel had lied and had not shown him the State's fingerprint evidence. He otherwise failed to articulate any reason he felt justified counsel's replacement, other than his general discomfort with her representation.[29]

Thus, the court held that the trial court did not abuse its discretion by denying his request for a new attorney.

Likewise here, the trial court acted within its discretion by refusing to appoint substitute counsel after Lloyd already had appointed counsel and chose to waive his right to counsel. Lloyd's reasons for wanting to replace appointed counsel were vague when he made the request at the July 20 hearing. He stated only that there were "some discrepancies, some miscommunication between my current standby counsel when he was appointed."[30] At most, such grievances amount to a general loss of confidence, which has been held to be an insufficient ground to substitute counsel.[31] And as in Deweese and Sinclair, once the court properly denied Lloyd's request for substitute appointed counsel, it did not violate his right to counsel by requiring him to choose between representing himself or accepting appointed counsel.

---

[28] 46 Wn. App. 433, 436, 730 P.2d 742 (1986).

[29] Id.

[30] RP (July 20, 2012) at 16.

[31] State v. Stenson, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997). A defendant seeking substitution of appointed counsel must show a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. State v. Schaller, 143 Wn. App. 258, 267-68, 177 P.3d 1139 (2007) (citing id.).

Lloyd contends that the State mischaracterizes his request as one for substitute counsel rather than simply one for reappointment of counsel. But as the record shows, the request is properly viewed as one for substitute counsel. From the beginning, Lloyd sought to have appointed counsel Vernon replaced with substitute counsel and only decided to proceed pro se when those requests were denied. At his first motion to discharge Vernon, he was granted a continuance to hire substitute private counsel. When he was unable to secure private counsel, he again asked to discharge Vernon and be allowed to proceed pro se, explaining, "If my only option is Mr. Vernon or myself, I will take Shawn Lloyd any day."[32] After waiving the right to counsel and choosing to represent himself, he then made the motion on July 20 to have "a new different public defender appointed," explaining to the court:

LLOYD: Yes, Your Honor. At this time I feel that the best position to defend myself in this case would be to have counsel assigned. There was some discrepancies, some miscommunication between my current standby counsel when he was appointed.

COURT: Are you asking for new standby or?

LLOYD: I'm actually asking for a repre-, new counsel.

COURT: You want to give up your right to represent yourself?

LLOYD: Yes, Your Honor. If I am allowed to have new counsel, Your Honor.

COURT: I see, okay.

LLOYD: If that's not granted, then I'll continue to represent myself.[33]

---

[32] RP (Mar. 28, 2012) at 12.
[33] RP (July 20, 2012) at 16.

It is clear from the court's questions and his answers that he was not seeking to reinstate his appointed counsel Vernon, nor would he accept Vernon if he was reappointed. Instead, he sought only to obtain substitute appointed counsel. Because Lloyd made it clear that he did not want appointed counsel Vernon to be reinstated, the court did not address whether it would have reinstated counsel if Lloyd was simply asking to reinstate Vernon. Rather, the court considered only his request for substitute appointed counsel. As discussed above, under <u>Deweese</u> and <u>Sinclair</u>, the trial court's denial of this request was a proper exercise of discretion.

Lloyd also raises a number of issues in his statement of additional grounds, none of which have merit. He first contends that he was forced to proceed pro se to end his "conflicting relationship" with appointed counsel Vernon, asserting that "it was clear Mr. Vernon and myself couldn't at bare minimum communicate with each other professionally."[34] But as discussed above, this is a vague assertion of dissatisfaction, and without further details or factual support, the trial court acted within its discretion by denying the request. Lloyd further argues that the court should have at least appointed Vernon when he was finally willing to accept Vernon as appointed counsel. But the record shows that he only made this concession once trial proceedings had begun, while the court was in the midst of a suppression hearing and Vernon was unprepared to immediately proceed. Thus, as discussed above, the trial court was well within its discretion to refuse to reappoint Vernon in the interests of judicial efficiency.

Lloyd further contends that the trial court should have granted his request to reinstate counsel when his "psychological and emotional state wasn't sound enough to

---

[34] Statement of Additional Grounds at 1.

make the decision" to waive his right to counsel.[35] But as the trial court found, there was no basis for his assertion of incompetence. As the court noted, he appeared before the court three times since the decision to represent himself and was "sufficiently mentally competent to make the decision to waive his right to counsel and to represent himself."[36]

Lloyd also takes issue with the process by which the trial court determined which juror would be rotated out when there was no need for the alternate juror. According to Lloyd, the court drew a number out of a bowl and the juror assigned to that number was rotated out. He contends that there should be a "much more reasonable, appropriate, and legal method for determining which juror would automatically be rotated out the day prior to deliberation," noting that the juror that happened to be rotated out was African American like himself.[37] But Lloyd provides no legal basis for challenging this procedure, nor does he identify any resulting prejudice amounting to reversal error.

Lloyd next contends that the State never produced evidence that there was an actual no-parking sign and that "no evidence was provided that would suggest that there was no locked entry that was forcefully ajar[ ] open on the car's center console."[38] While the legal basis for this challenge is unclear, it appears that he is challenging the search of his car. In any event, the record shows that the State produced evidence of both facts, the weight of which was to be determined by the trier of fact. Officer Kerzman testified about the existence of the no-parking sign. And while Lloyd disputed

---

[35] Id. at 2.

[36] RP (Aug. 14, 2013) at 108.

[37] Statement of Additional Grounds at 2.

[38] Id.

13

this, in its findings on the suppression motion, the trial court resolved this factual dispute by finding Kerzman's testimony credible. Additionally, Kerzman testified that the center console was unlocked and "opened right up" when lifted.[39] His credibility about this fact was likewise an issue to be resolved by the finder of fact.

Finally, Lloyd contends that there is a conflict of interest in his appellate representation because his appellate lawyer and Vernon both work for the Defenders Association. According to the appellate record, counsel on appeal is Gregory Link, who is identified as working for the Washington Appellate Project. Based on our review of the record, there is no basis from which we can determine an actual conflict. We assume that actual conflicts of interest would be screened by the Washington Appellate Project and direct Lloyd to raise this issue with that agency.

We affirm the judgment and sentence.

WE CONCUR:

---

[39] RP (Aug. 15, 2012) at 264.

14