# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>VERNON WAYNE OFFICER,<br><br>               Appellant. | No. 77946-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: July 29, 2019 |

ANDRUS, J. — Vernon Officer appeals his conviction and sentence for unlawful imprisonment, third degree assault, and felony harassment. He argues that the trial court violated his Sixth Amendment right to counsel by granting his request to represent himself and then abused its discretion in refusing to reappoint counsel in the middle of trial. Officer also challenges the sufficiency of the evidence of unlawful imprisonment. Finally, he contends his exceptional sentence exceeds the statutory maximum allowed for the offenses. We remand for the trial court to include a notation explicitly stating that the combination of Officer's confinement and community custody may not exceed 60 months. In all other respects, we affirm.

## FACTS

In the summer of 2016, Officer and Suzanne Wood met through an online dating website and began a romantic relationship. Wood moved to Seattle from Portland to live with Officer, who had just completed a federal sentence for filing a

false tax return. After Wood and Officer moved into an apartment in Wallingford, the relationship soon became troubled.

Wood had previously worked as a receptionist at a law firm and had once considered becoming an attorney. Officer asked her to help him with a lawsuit against the federal government. According to Wood, Officer "lived, ate and breathed" the lawsuit. Officer told Wood he wanted her to work on the lawsuit seven hours a day. But whenever Wood questioned Officer about his claims, which appeared to involve money Officer took from an elderly business partner, Officer "would just go ballistic." Officer once slammed Wood into the kitchen sink, telling her that he had previously been in prison and threatened her with harm if she went to the police. Officer frequently "rant[ed] and rav[ed]" at Wood for various transgressions. Wood also witnessed Officer physically threaten his employer, resulting in Officer losing his job.

On December 16, 2016, Officer came home in a bad mood. He asked Wood if she had worked on his case that day. When Wood said that she didn't want to help him anymore, Officer became enraged and shoved her, hurting her neck.

The following morning, Wood woke up to Officer screaming at her and demanding that she cook him breakfast and work on his case. When Wood refused, Officer repeatedly picked her up and slammed her on the bed. Officer got on top of Wood, grabbed and scratched at her face, and began punching the bed next to her head. He yelled that he had nothing to live for and that he would kill her or have her killed. Wood was terrified and thought that she was going to die.

Wood eventually was able to get up and began packing a suitcase. Officer tried to grab the suitcase and said, "where do you think you're going?" She

repeatedly told Officer she wanted to leave. Officer sat on a couch by the door and told Wood she was not going anywhere. She waited for him to leave for work, but he told her "I'm not going to work. I'm going to stay right here on this couch, and you're not going anywhere." Officer told Wood she was under "citizen's arrest." When she pleaded with him to let her leave, he asked Wood if she was going to report him to his probation officer. Wood promised Officer she would not. "That's the last thing I was going to tell him was yes . . . Because I – I feared for my life. At that point I really, really did."

Wood testified that Officer's truck was blocking her car in the driveway and she asked Officer for his keys so she could move his truck. He refused to let her have his keys. She repeatedly asked him to let her leave; he refused. After about an hour, Officer finally agreed to move his truck.

Wood left in her car but because she did not know the area, she drove around Wallingford. She looked up the closest police station and put its coordinates into her car's GPS. She drove to the station but then became frightened that Officer would kill her if she went inside. She had blood on her face and in her hair so she returned to the apartment, confirmed Officer was gone, and washed herself. She then returned to the police station and reported the assault.

The police officers with whom Wood spoke observed and photographed scratch marks on Wood's face and neck. Wood sustained injuries to her face, ear, and neck, and at the recommendation of medics who examined her at the precinct, she sought medical treatment for her injuries at the University of Washington Medical Center. She was diagnosed with acute neck strain and neck contusions,

3

abrasions, ear pain, and a mild concussion. Her face was visibly swollen on one side.

The police informed Wood they intended to arrest Officer while she was at the hospital, so after receiving treatment, she returned to the apartment and barricaded the door. Officer then began calling her demanding to know why she had gone to the police. She denied having done so because she was so afraid. But Officer said he had seen police vehicles outside their apartment, and decided not to return to the apartment. He rented a room at a local motel instead. Over the next few days, Officer called Wood over 90 times. Police arrested Officer on December 22, 2016, at his motel after he sought a temporary restraining order against Wood, claiming he was afraid of her.

The State charged Officer with third degree assault, unlawful imprisonment, felony harassment and fourth degree assault. As to the first three charges, the State alleged as an aggravating factor that they were part of an ongoing pattern of domestic violence. After jury selection but before opening statements, Officer waived his right to counsel and represented himself for the remainder of the trial. A jury acquitted Officer of fourth degree assault but convicted him on the remainder of the charges and the domestic violence aggravating factors. The trial court imposed a 60-month exceptional sentence and 12 months of community custody.

Officer appeals.

DISCUSSION

1. Waiver of Right to Counsel

Officer contends the trial court erred in permitting him to waive his right to counsel at trial and abused its discretion in refusing to reappoint counsel when Officer changed his mind mid-trial. We disagree.

Officer was represented by Joshua Andrews when his trial started on October 3, 2017. Andrews participated in pretrial hearings, including a CrR 3.5 hearing, and in jury selection from October 3 to October 9, 2017. On the morning of October 10, before opening statements, Andrews informed the court that Officer "would like to make a motion to discharge counsel and proceed pro se."

The court initially responded "I mean we're – we – we've already done jury selection. We're at – on the cusp of opening statement . . . And it's kind of late for that, to be quite candid about it." The prosecutor asked the court to "engage with the Defendant in the colloquy, and then make a ruling at that time." Andrews stated "I don't know what the Court's authority would be to deny a knowing, intelligent and voluntary waiver of that right. It is a constitutional right to represent himself." Andrews informed the court that Officer was ready to proceed and would not be asking for a continuance. The court responded "[W]hen it's brought too late, the Court has the discretion to deny it." The prosecutor responded, "I agree with Your Honor, it is within your discretion. But I do think that it's important for the Court [to] engage in the colloquy that we typically use."

At the request of both the prosecutor and defense counsel, the court conducted a lengthy colloquy with Officer regarding the waiver of counsel. The court confirmed Officer had never studied law, but Officer indicated he had

5

represented himself approximately 25 or 30 years earlier in a trespassing case and had been acquitted. The court went over the charges against Officer, including the domestic violence aggravating factors, and the maximum penalty Officer faced. Officer confirmed he had discussed potential defenses with Andrews and he understood he would be on his own during trial. The court explained to Officer that "you'll be out there by yourself . . . making your own decisions, making some of your own mistakes, and it's not going to be my job to fix them for you." Officer said, "I understand."

Officer also understood he could not change his mind once he had waived counsel:

> THE COURT: [I]f we do this, it's not one of those things you can say hey, Judge, I think I really made a bad mistake.
>
> MR. OFFICER: I know.
>
> THE COURT: I want Mr. Andrews back.
>
> MR. OFFICER: He was right here.
>
> THE COURT: And expect him to come and clean up the mess for you.
>
> MR. OFFICER: Yes, sir. That isn't – there will be no mess. This man was not there. This woman was not there while I was there. I was there.

Officer demonstrated a limited familiarity with the evidence rules and some confusion about hearsay, but he acknowledged that he would be expected to follow the rules. When asked why he wanted to represent himself, Officer said:

> MR. OFFICER: Because I'm not – because – 'cause for one thing, this is a hear – hearsay crime. There is no video, there was no recordings. The lawyer was not present, neither was the State. It's my word against the other person's. And I have substantial evidence that proves I couldn't have done the crime.

6

. . . .

> THE COURT: That – that sounds fine. But you understand that that – that evidence could – if it's admissible, that evidence could be provided to the jury through an attorney as well. You understand that, right?
>
> MR. OFFICER: But he's not going to get it across to the – the jurors like I will.
>
> THE COURT: So you – you don't think he'd be as persuasive as you might be?
>
> MR. OFFICER: Exactly.

When asked how long Officer had been contemplating self-representation, he responded "Quite – quite awhile ago. I – I needed – I needed to get to this point."

The court advised Officer that it was not in his best interests to represent himself:

> THE COURT: Okay. Well, have you ever heard the expression that someone who represent themselves –
>
> MR. OFFICER: Is a fool.
>
> THE COURT: – has a fool for a client?
>
> MR. OFFICER: You betcha.
>
> THE COURT: Okay.
>
> MR. OFFICER: I've heard that. And I'm – I'm the biggest fool in the world, I guess, because I'm going to try some Jimmy Stewart here today. Have you ever seen that movie where he's a – he's a – does himself? You seen that movie, I'm sure.

The court asked if Officer still wanted to represent himself, despite the court's warnings. Officer said yes. The court found Officer had made a knowing, intelligent and voluntary waiver of his right to appointed counsel.

The court took a recess and Andrews spent approximately seven minutes going over a written waiver form with Officer. The form explained clearly the risks of self-representation and the lack of a right to reappointment of counsel. After confirming that Officer had no additional questions, the court signed the written waiver of counsel and discharged Andrews. The court estimated that it spent approximately 45 minutes trying to dissuade Officer from waiving his right to counsel.

When the jury returned, the court informed the jury "Mr. Officer at this point in time has elected to represent himself from here on out." The prosecutor and Officer gave opening statements, and the State called its first two witnesses, an emergency room doctor and a police officer. Officer extensively cross-examined these witnesses.

After the lunch recess on October 11, 2017, and after the State had called three more law enforcement witnesses, Officer stated that he wanted an attorney again. Officer told the court that he realized he did not know what was in discovery, did not know how to question witnesses, and was afraid he "might lose control and yell or something" when Wood testified. Officer said, "I thought it would be a lot easier than it is." Officer asked if the court would reappoint Andrews.

The prosecutor objected because the State had flown in witnesses who were waiting to testify and who needed to catch their return flights home. The prosecutor also argued that reappointing Andrews would lead to delay because it was unreasonable to expect Andrews to pick up where Officer left off as though nothing had happened.

The court stated "I told him I wouldn't [reappoint counsel]. I'm inclined to stick with that." But the court told Officer that it would temporarily defer ruling on his request, stating that the State had witnesses waiting and it needed more time to "digest this."

The following morning, the court addressed Officer's request for reappointment of counsel. The court noted that it spent a lengthy period of time discussing Officer's request to represent himself and determined that Officer validly waived counsel, despite the court urging him not to do so.

> I pointed out all the pitfalls that would exist if he represented himself, his lack of experience with the Rules of Evidence, his lack of experience with criminal procedure, his lack of experience in a courtroom trying cases, the – the fact that he couldn't change his mind later on and ask that I bring Mr. Andrews back to clean up any mess he made.

> Bottom line is it boiled down to the fact that in my opinion, Mr. Officer wanted unfettered reign to try the case the way he thought was in his best interest. And I don't know what was going on between him and Mr. Andrews, but I would suspect, based on the many motions in limine that Mr. Andrews brought, they had different theories as to what would be the most effective for Mr. Officer.

The court noted that it had "been very lax in my application of procedural and evidentiary rules in order to facilitate Mr. Officer's efforts in getting that testimony before the jury. . . . I think he's getting a fair opportunity to elicit the testimony that he wants by virtue of the fact that I'm ignoring the rules in many ways to allow that to happen." The court denied Officer's request for reappointment of counsel.[1]

A criminal defendant has the constitutional right to waive the assistance to counsel and represent himself at trial. Faretta v. California, 422 U.S. 806, 819-21,

---

[1] The trial court reappointed Andrews for the sentencing hearing.

95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); State v. Madsen, 168 Wn.2d 496, 500, 229 P.3d 714 (2010). This right, protected by Sixth Amendment of the United States Constitution and article I, section 22 of the Washington State Constitution, is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice. Madsen, 168 Wn.2d at 503.

The right to self-representation, however, is neither absolute nor self-executing. State v. DeWeese, 117 Wn.2d 369, 377, 816 P.2d 1 (1991). The court must first determine whether the request for self-representation is timely and unequivocal. State v. Curry, 191 Wn.2d 475, 486, 423 P.3d 179 (2018). The court must then determine whether the request is voluntary, knowing, and intelligent. Curry, 191 Wn.2d at 486.

We review a trial court's decision to grant or deny a defendant's request to proceed pro se for abuse of discretion. Curry, 191 Wn.2d at 483. A court abuses its discretion only if its decision is manifestly unreasonable, rests on facts unsupported in the record, or was reached by applying the wrong legal standard. Curry, 191 Wn.2d at 483-84. We give great deference to the trial court's determination because it is in a better position than this court because it had "the benefit of observing the behavior and characteristics of the defendant, the inflections and language used to make the request, and the circumstances and context in which it was made." Curry, 191 Wn.2d at 484-85 (citing State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

a. The timing of Officer's request

Officer first argues the court relied on the wrong legal standard in assessing the timeliness of his request. The record does not support this argument.

10

We require a request for self-representation to be timely to ensure a defendant cannot use it "to delay one's trial or obstruct justice." State v. Breedlove, 79 Wn. App. 101, 106, 900 P.2d 586 (1995). When a request to proceed pro se is made governs the amount of discretion the court has to grant or deny it. If the request is made "well before the trial or hearing and unaccompanied by a motion for a continuance, the right of self-representation exists as a matter of law." Madsen, 168 Wn.2d at 508 (quoting State v. Barker, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994)). If the request is made "as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter." Madsen, 168 Wn.2d at 508 (quoting Barker, 75 Wn. App. at 241). If the defendant makes the request "during the trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court." Madsen, 168 Wn.2d at 508 (quoting Barker, 75 Wn. App. at 241).

Here, Officer made his request to proceed pro se after the jury was empaneled but before opening statements began. Officer's request falls into the last category in this continuum and the court possessed the greatest amount of discretion to grant or deny the request. Both trial court and the State acknowledged this discretion. There is no evidence in the record that the court misunderstood the extent of its discretion.

Officer argues that because his request was untimely, the trial court was *required* to deny it. Officer relies on a statement made by our Supreme Court in Curry:

If the request for self-representation is untimely or equivocal, the defendant's right to counsel remains in place and the trial court must deny the request to proceed pro se.

Curry, 191 Wn.2d at 486. But the use of the word "or" in this sentence must be read in light of the entire reasoning of Curry, in which the Supreme Court discusses the "broad" discretion a trial court possesses to allow a defendant to waive the right to counsel. The Court conclusively rejected any categorical canon:

> [A] generally applicable rule cannot be effectively constructed. . . . This is because the decision is fact specific and the extent of the trial court's discretion is partially tied to the timing of a defendant's request to proceed pro se. . . . Accordingly, we have not articulated a bright-line rule instructing the trial court when to grant and when to deny a request for self-representation, nor is it pragmatic to do so.

Curry, 191 Wn.2d at 485-86 (citations omitted). Clearly, if a request is untimely, a trial court has discretion to deny the request. But it is not required to do so.

### b. Officer's unequivocal request to proceed pro se

Officer next contends that the court erred in finding that his request was unequivocal.[2] He argues that his comments were merely an expression of frustration with his attorney, not a request to represent himself. We again find this argument inconsistent with the record.

In Curry, the Supreme Court adopted the Ninth Circuit's definition of what constitutes an unequivocal request for self-representation. "[A]n unequivocal request to proceed pro se requires a defendant to 'make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself.'" 191

---

[2] Officer argues that the court failed to make an express finding that Officer's request was unequivocal. But our Supreme Court has held that an "oral proclamation from the judge that a request for self-representation is unequivocal is not required if the record reflects that the judge applied the correct requirement." Curry, 191 Wn.2d at 491.

Wn.2d at 490 (quoting United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994)). It instructed that trial courts should look at the form of the request (i.e., was the request made formally in a motion or spontaneously at a hearing), the language of the request (i.e., was the defendant asking to represent himself or just expressing frustration), and the context surrounding the request (i.e., was the request made because of a disagreement with counsel over trial strategy). 191 Wn.2d at 488. "[T]he trial court must make these determinations on a case-by-case basis, taking into consideration the circumstances of each request." Curry, 191 Wn.2d at 490.

Here, the record establishes that Officer unambiguously expressed an explicit choice to represent himself. First, Officer made the request after considering the option for "quite awhile." He told the trial court that he needed counsel's help through the pretrial motions stage and through jury selection but believed he was capable of moving forward on his own from that point. Although the request was made orally, these statements reveal that his request was neither spontaneous nor impulsive.

Second, while Officer voiced some general dissatisfaction with Andrews, he was not asking for a different attorney because he disagreed with counsel's trial strategy. He expressed a strong desire to act as his own counsel because he was there during the incidents at issue and Andrews was not. "[W]hen a defendant makes a clear and knowing request to proceed pro se, such a request is not rendered equivocal by the fact that the defendant is motivated by something other than a singular desire to conduct his or her own defense." State v. Modica, 136 Wn. App. 434, 442, 149 P.3d 446 (2006).

We do not find State v. Woods, 143 Wn.2d 561, 586-87, 23 P.3d 1046 (2001) to be factually analogous. In that case, the defendant sought to represent himself only to avoid a trial delay caused by the unavailability of counsel. The Supreme Court held that the defendant's request to represent himself was not unequivocal under these circumstances. Such was not the case here. Officer was not faced with a trial delay due to counsel's unavailability. And the trial court spent 45 minutes with Officer ensuring that his decision to represent himself was a matter of choice.

Finally, the context of Officer's request demonstrates that Officer believed he could do a better job than Andrews would. He acknowledged that he had not gone to law school and was not familiar with courtroom procedure. But he vowed that he was "more than capable of doing this." Officer stated that he had read all the discovery and could communicate his position more persuasively, to "show the jury . . . that I'm for real." This further shows that Officer made a clear and conscious decision to represent himself.

Even after 45 minutes of questioning, and being advised against doing so, Officer remained determined to represent himself. The form and language of Officers' request, as well as the context in which the request was made, confirm that Officer's request was unequivocal.

c. Officer's waiver was knowing, voluntary and intelligent

Officer contends the trial court erred in finding his waiver of counsel was knowingly and intelligently made because he erroneously assumed he would not be convicted if he had the opportunity to address the jury directly. But Officer's

choice to advance a defense that an attorney might view as unlikely to succeed is not a basis for finding his waiver less than knowing or intelligent.

To demonstrate a valid waiver of the right to counsel, the record must show the defendant understood "the dangers and disadvantages of self-representation" and establish "his choice is made with eyes open." Faretta, 422 U.S. at 835. The method for determining whether a defendant understands the risks of self-representation is a colloquy on the record. State v. Burns, 193 Wn.2d 190, 203, 438 P.3d 1183 (2019). The colloquy, at a minimum, must inform the defendant of the nature of the charges, the maximum penalty faced, and the fact that the defendant must adhere to the rules of evidence and criminal procedure. City of Bellevue v. Acrey, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).

The court conducted a lengthy and detailed colloquy with Officer on the requirements and dangers of self-representation. The court explained the charges Officer faced and the sentences he might receive if the jury convicted him. The court emphasized that the trial would be governed by procedural rules and "by your own admission, you don't know all that stuff . . . you haven't had years['] worth of training in this area, so you're at a disadvantage." Despite acknowledging the court's concerns, Officer never wavered from his desire to represent himself. He also signed a written waiver acknowledging that he would be required to "follow all legal rules and procedures, including the rules of evidence."

The court may not deny a request for self-representation because "the defendant is unfamiliar with legal rules" or over "concerns that courtroom proceedings will be less efficient and orderly than if the defendant were represented by counsel." Madsen, 168 Wn.2d at 505, 509. The court did not

15

abuse its discretion in finding that Officer knowingly, intelligently, and voluntarily waived his right to counsel and allowing him to represent himself.

### d. Declining to reappoint counsel

Finally, Officer challenges the trial court's refusal to reappoint counsel mid-trial. Once a defendant has asserted his right to represent himself and made a knowing, voluntary, and intelligent waiver of counsel, a criminal defendant is no longer entitled to reappointment of counsel. DeWeese, 117 Wn.2d at 379. Following a valid waiver, the reappointment of counsel is within the court's discretion, considering all circumstances that exist when the request for reappointment is made. Modica, 136 Wn. App. at 443. "[T]he degree of discretion reposing in the trial court is at its greatest when a request for reappointment of counsel is made after trial has begun." Modica, 136 Wn. App. at 443-44. A defendant's poor performance as his or her own attorney is not, by itself, a reason to reappoint counsel. State v. Canedo-Astorga, 79 Wn. App. 518, 526, 903 P.2d 500 (1995).

Citing Canedo-Astorga, Officer argues that "the request for reappointment should be granted absent reasons to deny." Canedo-Astorga, 79 Wn. App. at 525. In that case, the court allowed the defendant to proceed pro se and appointed defense counsel to serve as standby counsel. On the second day of trial, the defendant moved for the reappointment of standby counsel as his attorney. Standby counsel responded:

> Well, this obviously puts me in a difficult position by having to take over the case halfway through. I am familiar with the facts of the case, however, I did not prepare this case in the last week or so with an eye . . . toward trying it. . . . I think if I'm going to be appointed back at this point to represent Mr. Canedo, then I would ask that the

16

trial be stopped and there be a continuance until I have such time as I need to consult with Mr. Canedo to determine what it is exactly that he wants, and that would not be a short process, I'm sure, given the history of this case.

Canedo-Astorga, 79 Wn. App. at 523. Division Two of this court held that it was not an abuse of discretion to deny reappointment of counsel under these circumstances.

This case presents similar facts. By the time Officer made his request, Andrews had been absent for a day and a half of trial. There is no evidence in the trial record showing that Andrews was available to immediately return to the trial.[3] The State argued that any delay would present a hardship to Wood, who had flown to Seattle from out of state to testify and who planned to return home that same day. The potential for delay that would result from reappointment of counsel mid-trial was a sufficient reason to deny Officer's request. The court did not abuse its discretion.

## 2. Sufficiency of the Evidence

Officer contends the evidence was insufficient to convict him of unlawful imprisonment because blocking Wood's car with his truck may have inconvenienced her but did not interfere with her ability to leave the apartment. This argument, however, ignores the evidence that Officer sat by the apartment's door telling her she could not leave.

---

[3] After briefing in this case was completed, Officer filed a supplement to his pro se statement of additional grounds. Officer attached a letter from Andrews, stating that, after Officer requested reappointment of counsel, the trial court never contacted him as to whether he was available. Andrews asserts that he was, in fact, available and "could have returned as counsel for Mr. Officer at any time without any delays to the jury trial." But we do not consider matters outside the trial record in a direct appeal. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition. McFarland, 127 Wn.2d at 335.

17

Evidence is sufficient to support a conviction if a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Washington, 135 Wn. App. 42, 48-49, 143 P.3d 606 (2006). Credibility determinations and the persuasiveness of the evidence are for the trier of fact and are not subject to review. State v. Cantu, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

A person is guilty of unlawful imprisonment if he or she knowingly restrains another person. RCW 9A.40.040(1). A person is restrained if his or movements are restricted "without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). Restraint is "without consent" if it is accomplished by physical force or intimidation. RCW 9A.40.010(6). A substantial interference is "a real or material interference with the liberty of another as contrasted with a petty annoyance, a slight inconvenience, or an imaginary conflict." State v. Robinson, 20 Wn. App. 882, 884, 582 P.2d 580 (1978). Words alone can be sufficient to establish intimidation and restraint. See State v. Lansdowne, 111 Wn. App. 882, 889, 46 P.3d 836 (2002) (when defendants restrained an insurance inspector by telling her to sit down on the couch, calling her employer and stating "this girl is not leaving here alive if you cannot give me a damn good reason why she's here," this was sufficient evidence of unlawful imprisonment as to survive a Knapstad[4] motion).

---

[4] State v. Knapstad, 107 Wn.2d 346, 729 P.2d 48 (1986).

It is a defense to unlawful imprisonment that the victim had a reasonably available avenue of escape, unless "the known means of escape . . . present[s] a danger or more than a mere inconvenience." State v. Washington, 135 Wn. App. at 50. But even if there is a potential escape route, the defense fails when the victim is fearful of trying to escape. State v. Allen, 116 Wn. App. 454, 466, 66 P.3d 653 (2003).

Relying on State v. Kinchen, 92 Wn. App. 442, 451-52, 963 P.2d 928 (1998), Officer argues that there was insufficient evidence of unlawful imprisonment because Wood was able to leave the apartment when she wished. In Kinchen, the defendant locked his children in his apartment while at work. This court held that there was insufficient evidence of unlawful imprisonment because the children were able to safely get in and out via a window or sliding door.

Officer's reliance on Kinchen is misplaced. The children in Kinchen were alone in the apartment and had the opportunity to flee out a sliding door. Here, however, Officer sat directly next to the front door. He told Wood that he was going to stay there and that she could not leave. This occurred immediately after Officer physically assaulted Wood and threatened to kill her. Wood testified that she was terrified of Officer. A reasonable jury could conclude that Wood was unable to escape via the door because she was too afraid that Officer would hurt her. The evidence was sufficient to establish Officer knowingly restrained Wood from leaving and to support the unlawful imprisonment conviction.

3.    Statutory Maximum

Officer contends that the combined total of confinement and community custody exceeds the statutory maximum. We agree, as does the State. However,

Officer is not entitled to resentencing because a notation on his judgment and sentence will suffice.

Officer was convicted of three class C felonies. See RCW 9A.36.031(2); RCW 9A.40.040(2); RCW 9A.46.020(2)(b). The maximum penalty for a class C felony is 60 months. RCW 9A.20.021(1)(c). The court imposed an exceptional sentence of 60 months on each count, to be served concurrently. The court also imposed 12 months of community custody, acknowledging that, since it had imposed 60 months of confinement, "there may not be time to run that."

RCW 9.94A.505(5) restricts a trial court from imposing a combined term of confinement and community custody that exceeds the statutory maximum. For standard range sentences, the trial court is obligated to reduce the required term of community custody when the combined time of confinement and community custody exceed the statutory maximum. RCW 9.94A.701(9). But "[b]y its plain language, RCW 9.94A.701(9) applies only to terms of confinement imposed within the standard range." In re Pers. Restraint of McWilliams, 182 Wn.2d 213, 217, 340 P.3d 223 (2014). For exceptional sentences, "a notation on the judgment and sentence explicitly stating that the combination of confinement and community custody would not exceed the statutory maximum" is the appropriate remedy. McWilliams, 182 Wn.2d at 218.

The State acknowledges that if Officer serves his full sentence, he will serve more time than the statutory maximum permitted. Officer's judgment and sentence does not contain the required notation informing the Department of Corrections that the combined term of confinement and community custody cannot exceed the

statutory maximum. Accordingly, we remand to the trial court to include this notation.

4.     Statement of Additional Grounds

In a pro se statement of additional grounds, Officer contends that the court erred when it prematurely terminated his cross-examination of Wood. But a defendant's right to cross-examination is not absolute, and a trial court has broad discretion to regulate testimony and witness examination "so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." ER 611(a). Officer was permitted to cross-examine Wood for approximately two and a half hours. The trial court only terminated Officer's cross-examination at the end of the day, after Officer repeatedly argued with Wood and called her a liar. Officer fails to show that the court abused its discretion in this regard.

The remainder of Officer's claims are similarly meritless. Officer contends that he was not given sufficient time in the jail library or the use of a computer to review discovery. But this claim requires consideration of matters outside the record, which we do not consider in a direct appeal. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Officer also challenges the credibility of Wood's testimony and reasserts his own version of the events underlying his conviction. However, we do not review a jury's credibility determinations. State v. Myers, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997). Finally, Officer reiterates his desire to have Andrews reappointed to represent him at trial. Since this claim was adequately briefed by counsel, we do

not address it.  See RAP 10.10(a) (purpose of statement of additional grounds is to permit appellant, "to identify and discuss those matters related to the decision under review that the [appellant] believes have not been adequately addressed by the brief filed by the [appellant's] counsel").

We remand for the trial court to add a notation to Officer's judgment and sentence clarifying that the total term of confinement and community custody actually served may not exceed the statutory maximum.  In all other respects, we affirm.

Andrus, J.

WE CONCUR:

Appelwick, CJ